### JOSEPH T. MOODY *vs.* CHARLES BLAKE.

Suffolk. Nov. 17, 1874. — Jan. 11, 1875. WELLS & DEVENS, JJ., absent.

A., falsely representing himself to be a member of a firm, bought, in the name of the firm, goods from B., who sent them by a carrier to the firm. On the refusal of the firm to receive them, A. sold them to C., to whom they were delivered by the carrier at A.'s request. *Held*, that A. had no title to the goods, and that an action for their conversion would lie by B. against C., although the latter was a purchaser in good faith.

TORT for the conversion of 200 bedsteads. Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff put in evidence tending to show the following facts : One Porter came to the plaintiff's place of business in Bethel, Maine, and gave him a business card of H. S. Hills & Co., of Boston, and told the plaintiff that he was A. C. Pool, a member of that firm ; that they were going to fit up a boarding-house, and wanted some bedsteads. The plaintiff showed him some bedsteads, and a price was fixed, and the terms of payment, and then Porter told the plaintiff that he was not authorized to make the bargain, but must consult his senior partner in Boston. He also told the plaintiff, if he wanted to communicate with him in regard to the matter, to direct his letters to A. C. Pool, 174 Friend Street, although the place of business of H. S. Hills & Co. was on Fulton Street, stating as a reason therefor, that the prevalence of the small-pox in Boston prevented their getting their mail, if directed to their place of business, as carriers would not deliver there. Porter then went away, and in a day or two the plaintiff received the following letter : " Boston, March 11, 1873. Mr. Moody, Sir : Pressing business has prevented my

writing you before. My partner has gone West for five or six weeks, but my contract with you is satisfactory. If your stock does not come to hand in time for our contract, we can fill from here, and have a market for your goods. Please find out the exact cost of transportation, as I had not time to ascertain. Please fill my order as soon as convenient, and in answer to this you will inform me about how long time you will require. Respectfully yours, A. C. Pool, 174 Friend Street, Boston, Mass.'

The plaintiff then sent 201 bedsteads, by a carrier, directed to H. S. Hills & Co., Fulton Street. When they arrived, notice was sent to H. S. Hills & Co., but they informed the carrier that they had not ordered them, and refused to receive them. The next day, Porter came to H. S. Hills & Co. and said he had the bedsteads to sell, and wanted to sell them, and asked the real A. C. Pool, who was a member of said firm, if he wanted them ; he said he could not take so many, might take a few. Hills gave Porter some names (one of which was the defendant's) to whom he might be likely to sell them. Porter went to the carrier and told him he had sold the bedsteads to the defendant, and ordered him to take them to Blake's store, which was done. It appeared that Porter was not a member of H. S. Hills & Co., and was not authorized by them to make any purchases of bedsteads. The terms of payment were a note on thirty days for the first lot of bedsteads. When the bedsteads arrived, a note was sent by letter, signed A. C. Pool, which note was a forgery.

Previous to the reception of this note, when the bedsteads were sent, a bill of the same was sent to A. C. Pool on Friend Street, made out to H. S. Hills & Co. The plaintiff also wrote to his brother to inquire the standing of H. S. Hills & Co., before he sent the bedsteads. Within a day or two after he had received the note, he received a letter from his brother, saying there was some misunderstanding about the matter, and he had better come up and see to it. On his arrival, he found that he had been swindled by Porter. He then went to the defendant and demanded the bedsteads, which were refused. There was also evidence that, a few months previous to this transaction, the plaintiff had sent some bedsteads to Boston, and had written to a brother in Lynn to have them sold, and that brother asked another brother in Boston to attend to it, and he employed Porter, who was a

brother-in-law, to sell these bedsteads, and Porter had sold them to H. S. Hills & Co., and paid over the money to the brother who employed him. But the plaintiff testified that he did not know of Porter's connection with that transaction until some time after this suit was begun. This was all the testimony offered by the plaintiff.

The defendant contended that there was no evidence to go to the jury, and asked for a verdict; but the judge refused to order a verdict.

The defendant then testified that Porter came to him to sell the bedsteads, and referred him to H. S. Hills & Co.; that before he bought, he went to H. S. Hills & Co., and they told him they had bought the same kind of bedsteads before of Porter, and that these had been sent to them, but they did not want so many, and that they understood that Porter had charge of the selling of them, as before. Thereupon he bought them, and paid the same price for them that Hills & Co. had paid for the former lot; that the plaintiff afterwards came and demanded the bedsteads, and he refused to give them up.

This was all the evidence in the case, except on the question of value, and the defendant contended that there was no evidence for the jury, but the judge ruled that the case should be submitted to the jury.

The defendant then asked the judge to rule: " 1. That if the goods were sold with the intention to pass the property, although it was brought about by a fraudulent device, then the defendant would not be liable, if he bought them in good faith; 2. That the plaintiff had constituted Porter his agent, and so the defendant was not liable; 3. That the plaintiff had constituted H. S. Hills & Co. his agent to a certain extent, sufficient to authorize the defendant to purchase and hold these goods, if it was done with their knowledge and agreement."

The judge refused all these prayers as asked for; but, upon the question embraced in the first request, instructed the jury that if the goods were sold with the intention to pass the property to A. C. Pool individually, and not to the firm of H. S. Hills & Co., the defendant would not be liable, if he bought in good faith. As to the questions involved in the other prayer, the judge left it to the jury to determine whether the plaintiff had made Porter

or H. S. Hills & Co. his agents, giving them full instructions upon these and other questions in the case, not excepted to, except so far as the judge declined to give the instructions asked for. The jury found for the plaintiff, and the defendant alleged exceptions.

*L. M. Child*, for the defendant.

*C. W. Turner*, for the plaintiff.

AMES, J. It is well settled that where a vendor is induced by fraudulent representations to deliver property to a dishonest or irresponsible purchaser, yet, if that purchaser transfers it for a valuable consideration to a third person having no notice of the fraud, and acting in good faith, such third person will hold the property in preference to the original seller. *Hoffman* v. *Noble*, 6 Met. 68. *Rowley* v. *Bigelow*, 12 Pick. 307. But the present case does not fall within this rule. The plaintiff never sold these goods to Porter, and made no contract with him. He supposed himself to be dealing only with Hills & Co. He never delivered the goods to Porter, and never consented to their going into his possession. When Hills & Co. refused to receive them, they remained in the hands of the carrier, but were the property and constructively in the possession of the plaintiff. The only mode in which Porter could get them into his hands was by the false pretence that he had authority from the owner to dispose of them. This was a wrongful conversion of them to his own use, by which he could acquire no title, and for that reason it was not in his power to give any title to the defendant, although the latter may have acted in entire good faith. It appears that as soon as the plaintiff discovered (in the language of the bill of exceptions) that he had been " swindled," he demanded the restoration of the goods. The case therefore falls within the rule laid down in *Stanley* v. *Gaylord*, 1 Cush. 536 ; *Gilmore* v. *Newton*, 9 Allen, 171 ; *Bearce* v. *Bowker*, 115 Mass. 129.

The first ruling requested by the defendant was therefore properly refused, and that which was given upon the question embraced in that request was sufficiently favorable to the defendant. With regard to the other requests, the court left it to the jury to determine as to the alleged agency, with full instructions, not excepted to, on the general subject. This was all that the defendant was entitled to ask. We see no ground on which the court

could have ruled, as matter of law upon the evidence reported, that the plaintiff had constituted Porter his agent, or that he had given to Hills & Co. the limited authority indicated in the defendant's third request. All this matter was left to the jury, with proper instructions. *Exceptions overruled.*