Okey, C. J.
A remark made in Cundy v. Lindsay, 3 App. Cas. 459, is quite applicable here. There it was said, “You have in this case to discharge a duty which is always a disagreeable one for any court, namely, to determine as between two parties, both of whom are perfectly innocent, upon which of the two the consequences of a fraud practiced upon both of them must fall.” Rut our duty in this case, as in all others, is simply to declare the law. The only question here is whether, in view of the facts set forth in the statement of the case, the property in the hogs passed from Hamet. If it did, the judgments in the courts below are right; if it did not, they are wrong. In the decision of cases of this sort, difficult questions are sometimes presented; but the principles upon which they should be determined are firmly established.
If Rohner had offered to buy the hogs for himself, and Hamet had agreed to sell them to him, and had made deli very thereof in pursuance of such sale, the property in the hogs would have passed to Rohner, although the sale had been induced solely by fraudulent representations made by Rohner. That would have been a defacto contract; and while it might have been avoided by Hamet, by reason of the fraud, while the property remained in the possession of Rohner, yet if Rohner had sold the hogs, before the contract was thus avoided, to Letcher & Co., they having no knowledge of the fraud, the latter would have acquired a perfect title. Rowley v. Bigelow, 12 Pick. 307; Hoffman v. Noble, 6 Met. 68; Schaeffer v. Macqueen, 1 Disney, 453 ; Attenborough v. Dock Co., 3 C. P. D. 450; Babcock v. Lawson, 4 Q. B. D. 394; affirmed, 5 Q. B. 284. In a case where this principle was enforced (Moyce v Newington, 4 Q. B. D. 32), Cockburn, C. J. said: “ The reasoning on which this conclusion is based, may not appear altogether consistent with principle, but, agreeing in the result, we should prefer to adopt the view of the American courts, as stated in the case of Root v. French (13 Wend. 570), a case decided in the supreme court of judica *359 ture of tlie state of New York, according to which the preference thus given to the right of the innocent purchaser is treated as an exception to the general law, and is rested on the principle of equity that where one of two innocent parties must suffer from the fraud of a third, the loss should fall on him who enabled such third party'to commit the fraud.”
But this was not a sale to Rohner in his own right. He made no proposition to buy in any other way than as agent. Hamet did not agree to sell to any other than Letcher & Co., who never agreed to buy of him, and he was induced to sell solely by reason of Rohner’s representation that he was such agent, which representation was wholly false, as Rohner well knew. This, therefore, was not a contract voidable merely, but an agreement wholly void; and, under the circumstances, the property in the hogs never passed from Hamet. Hence, applying the maxim that no one can transfer a greater right or better title than he himself possesses (Roland v. Gundy, 5 Ohio, 202), it necessarily follows that Letcher & Co. are liable as for a conversion. Moody v. Blake, 117 Mass. 23; Barker v. Dinsmore, 72 Pa. St. 427; Saltus v. Everett, 20 Wend. 267; Fawcett v. Osborn, 32 Illinois, 411; Hardman v. Booth, 1 II. & C. 803; Higgons v. Burton, 26 L. J. Ex. 342; Kingsford v. Merry, 1 H. & N. 503 ; Hollins v. Fowler, L. R. 7 Q. B. 616; affirmed, L. R. 7 App. 757; In re Reed, 3 Ch. D. 123 ; Lickbarrow v. Mason, 1 Smith’s L. C. 2 pt. 1195; Cundy v. Lindsay, supra.
Perhaps the principle here involved was more fully considered in the latter case (Cundy v. Lindsay) than in any-other. The facts briefly stated were as follows: Lindsay & Co. were manufacturers of linen goods at Belfast, Ireland. Alfred Blenkarn, who occupied a room in a house looking into Wood street, Cheapside, wrote to Lindsay & Co., proposing to purchase a certain quantity of such goods, and in his letter used this address, “ 37 Wood street, Cheapside,” and signed the letters (without any initial for a Christian name) with a name so written that it appeared to be “ Blenkiron & Co.” There was a respectable firm known to Lindsay & Co. of the name, W. Blenkiron & Co.,” carrying on business at 123 Wood street. *360 Lindsay & Co. sent letters, and afterwards supplied goods, being all addressed to “Messrs. Blenkiron & Co., 37 Wood street,” which they supposed was the address of the respectable firm above mentioned. The goods were received by Alfred Blenkarn at that place, of which goods he sold 350 dozen of cambric handkerchiefs to the Messrs. Cundy, who had no knowledge of the fraud, and who resold them in the ordinary course of their trade.
On the hearing of the case before the judges of the Queen’s Bench (Lindsay v. Cundy, 1 Q. B. D. 348), in 1876, it was held that the property in the goods passed to Alfred Blenkarn, and consequently that Lindsay & Co. could not maintain an action against the Messrs. Cundy, innocent purchasers. But that decision was reversed the next year, in the court of appeals (Lindsay v. Cundy, 2 Q. B. D. 96), and the latter decision was affirmed in the House of Lords in 1878. Cundy v. Lindsay, supra. That was a stronger case for the innocent purchaser than this case. Indeed, on the latter hearing, Mr. Benjamin, who argued the case for the Messrs. Cundy, admitted that under circumstances such as are presented in this case, the property would not pass to the fraudulent vendee.
The circumstance that Hamet intended that Letcher & Co. should have the hogs is of no importance. He never intended they should acquire title from any other' than himself, nor do they make any claim to such property under any purchase they made from him. The case would be in no material respect different if Rohner had represented to Iiamet that he was agent of some firm other than Letcher & Co. Nor does the payment by Rohner of $55 on the agreed price have any other effect on the right to recover than to reduce the amount for which judgment should be rendered.
Counsel for defendants in error rely on Stoddard v. Ham, 129 Mass. 383, the syllabus of which is as follows: “ If A. sells goods to B., who sells them to C., the fact that A. supposed he was selling the goods to C. through B. as his agent, and would not have Sold them to B. on his sole credit, will not entitle A. to maintain an action against C. for a conversion of the goods.” But the decision lends no support to the defendants in error. *361 There it appeared that Stoddard & Co., the plaintiffs, had sold bricks to Leonard, believing that he was acting as agent for Ham, the defendant; but Leonard was acting for himself, and subsequently he sold the bricks to Ham. It was expressly found as a fact that “ Leonard was not guilty of any false representations as to agency, and it was a case of error and mistake on the part of the plaintiffs as .to the principal with whom they were dealing.” Of course, Stoddard & Co. failed in the action.
Defendants in error also rely on a remark of Mcllvaiue, J., delivering the opinion in Dean v. Yates, 22 Ohio St. 388, as to the effect of delivery of possession to a fraudulent vendee. But nothing was determined in that case inconsistent with the conclusion stated in this case. On the contrary, Dean v. Yates is entirely consistent with our decision of this case, and supports it, as it is likewise supported by Sanders v. Keber, 28 Ohio St. 630, also cited by defendants in error.
In the finding of facts in the court of common pleas, it was ascertained that, if Hamot was entitled to recover, the amount then (June 11, 1877) due to him, deducting the sum paid by Rohner, was $137.28. The judgment of the district court and court of common pleas will be reversed, and judgment will be rendered in favor of Ilamet and against the defendants in error for that sum, with interest from June 11, 1877, and costs.

Judgment reversed.