MAYHEW, Respondent, vs. MATHER and another, Appellants.

*May 5 — May 24, 1892.*

(*1, 2*) *Sale of chattels: Fraud: Rescission.* (*3*) *Court and jury: Finding of undisputed facts.* (*4*) *Judgment in replevin.*

1. The defendant M. purchased cheese from plaintiff, who understood that he was selling it to a firm for which M. had made previous purchases as agent; and M., knowing that plaintiff sold the cheese with that understanding, did not undeceive him. *Held,* that no title to the cheese passed to M., and he could transfer no title to another.

2. Plaintiff cashed a check sent him by M. for the amount which the latter claimed to be due on the cheese, but afterwards, on learning

that M. had sold the cheese as his own, tendered back the money and brought replevin against M. and his vendee. *Held,* that by cashing the check, without knowledge of the fact that M. claimed to have bought the cheese on his own account, plaintiff did not elect to ratify the sale, but might afterwards disaffirm or rescind it as he did.

3. In connection with a special verdict upon disputed questions in an action at law, the trial court may properly make a formal finding of the undisputed facts.

4. Under sec. 2888, R. S., the plaintiff in replevin cannot waive recovery of the property and take merely a money judgment, except when the property has been delivered to the defendant under sec. 2722.

APPEAL from the Circuit Court for *Sheboygan* County.

Replevin to recover 3,979 pounds of cheese. Plaintiff was a cheese manufacturer at Greenbush, Sheboygan county, and claimed that the defendant *Mather,* pretending to be the agent of William E. Smith & Co., a solvent firm of New York, agreed to purchase the cheese in suit of plaintiff, and that the plaintiff, relying on such representations as to *Mather's* agency, and knowing the firm of William E. Smith & Co. to be solvent, delivered the said cheese to *Mather* at Sheboygan; that *Mather,* after delivery of the cheese, denied his purchase as agent, and did not deliver the same to William E. Smith & Co., but that *Mather* and the other defendant, *Baltz,* unjustly detain the cheese. The defendants admit the delivery of the cheese by plaintiff to defendant *Mather,* November 1, 1889, and admit that it was never delivered to William E. Smith & Co., but deny all the other allegations of the complaint.

Upon the trial it appeared that the defendant *Mather* claimed to have bought from plaintiff the cheese in question on his own account, and with no representation of agency for any person. This was the main ground of defense, but other contentions were also made, which appear in the opinion. At the close of the evidence, after a motion for nonsuit was made and overruled, the defendants re-

quested a special verdict. The following proceedings took place:

"Plaintiff waived the recovery of the property, and asked to recover the value of the cheese set forth in the complaint, less the amount of the check paid on it, with interest from the date of the commencement of the action. That will avoid the need of adopting the form of verdict in replevin. *Defendant's counsel:* 'The court does not need to submit that general verdict, because the taking of this cheese and the detention of it are all in the case by undisputed evidence. There is not anything except the simple question of title that is to be determined. If there are any facts to be determined, these are the ones to be submitted to the jury.'

"The defendants requested the court to submit questions to the jury as follows: '(1) When did the plaintiff, *Mayhew*, first know that the defendant *Mather* had sold and delivered the cheese to the defendant *Baltz?* (2) What was the value of the cheese per pound? (3) Did *Mather* suppose and believe that the plaintiff, *Mayhew*, knew that he was buying the cheese in question not as agent but as purchaser?'

"The court directed the jury to answer the following questions, which, with the answers written thereunder, constitute the special verdict returned by the jury, as herein stated: '(1) Was it the understanding of the plaintiff at the time of the shipment of the cheese in question that W. E. Smith & Co. were purchasers thereof? *Answer.* Yes. (2) Did the defendant *Mather* suppose and believe that the plaintiff, *Mayhew*, knew that he was buying the cheese in question not as agent but as purchaser? *A.* No. (3) When did the plaintiff, *Mayhew*, first know that the defendant *Mather* had sold and delivered the cheese to the defendant *Baltz?* *A.* About the time the suit commenced. (4) What was the value of the cheese in question, per

Mayhew vs. Mather and another.

pound, at the time of the delivery on the 1st day of November, 1889? *A.* Nine cents.' "

Defendants moved for judgment, or, if that motion was not granted, for an order setting aside the verdict and for a new trial, both of which motions were overruled, and the court made further findings of fact in the case as follows: " (1) That the plaintiff was the owner and entitled to the possession of the property mentioned in the complaint at all the times therein mentioned, to wit, 3,979 pounds of cheese. (2) That the same was converted by the defendant *Channing G. Mather* on or about November 1, 1889, and was by said *Mather* unlawfully sold and delivered to the defendant *Peter Baltz* on or about December 1, 1889. (3) That the value thereof, at nine cents per pound, as found by the jury, was of the date of conversion by the said defendant *Mather*. (4) That the value thereof, at the time of the delivery to the said defendant *Baltz*, as shown by his testimony, was seven and one-half cents per pound, making the total value of the cheese at such time $298.43. (5) That the sum of $143.13, admitted by the pleadings to have been paid to the plaintiff and received by him, should be, under the plaintiff's tender, deducted from said value, to wit, making the balance of plaintiff's damages against both defendants the sum of $155.30 and interest thereon from commencement of action, December 21, 1889."

And the plaintiff thereupon elected to remit from the said special verdict one and one-half cents per pound to make the value of the cheese seven and one-half cents per pound.

And as conclusions of law the court found: " (1) That the plaintiff is entitled to and have judgment against the defendants, and each of them, for the said sum of $155.30 and interest as aforesaid, and for his costs and disbursements of this action." Judgment was rendered in accordance with the findings, and defendants appeal.

For the appellants there was a brief by *Nash & Nash*, and oral argument by *L. J. Nash.*

For the respondent there was a brief by *Seaman & Williams*, and oral argument by *W. H. Seaman.*

WINSLOW, J. It appears that the dealings between the plaintiff and the defendant *Mather* began in May, 1889, when the plaintiff claims that an arrangement was made between them by which he (plaintiff) was to make and deliver to defendant cheese for the season to fill orders from William E. Smith & Co. of New York. The cheese was to be stenciled with the name of William E. Smith & Co., and delivered to defendant at Sheboygan, at the market price. The defendant claims that the arrangement in May was only for some white cheese to fill only one order from William E. Smith & Co., and extended no further. Whatever the arrangement in fact was, the evidence showed that plaintiff shipped cheese to defendant every week or two all summer, all of which was stenciled "Wm. E. Smith & Co.," except some exceptional lots, which *Mather* ordered to be stenciled "M.B. 26." The lot which is in suit consisted of sixty boxes, and was shipped November 1, 1889, and was marked "Wm. E. Smith & Co.," and plaintiff testified that he supposed he was selling it in fact to William E. Smith & Co., through *Mather* as agent. The quality of this last lot was not satisfactory to *Mather*, and correspondence ensued; and on the 25th of November *Mather* sent to plaintiff a check for $143.13, with a letter stating that he could get no more out of the cheese, and a statement of account showing that he had deducted some claims for poor cheese and short weights on previous shipments, and that the amount of the check was the balance which he claimed to be due. There was also inclosed with this letter and check a statement and letter dated November 18, 1889, from the defendant *Baltz*, also a cheese jobber at

Sheboygan, which showed that he was at that time negotiating for the purchase of this lot of cheese. Plaintiff cashed the check on the same or the next day, but tendered back the money just prior to the commencement of this action.

This brief statement brings us to the contention made by appellants to the effect that plaintiff, by cashing the check after knowledge of the sale to *Baltz*, elected to ratify the sale to *Mather*, and cannot now disaffirm it. The law undoubtedly is that where a person who is entitled to rescind a contract for fraud, with knowledge of all the facts elects by a decisive act to ratify it, he will be bound by his election. The cashing of the check would doubtless be a decisive act if done with full knowledge of the facts, and the question is, Was it done with such knowledge? The jury found that *Mayhew* first knew that *Mather* had sold the cheese to *Baltz* about the time the suit was commenced, which was December 21, 1889. Unless this finding is against the evidence, it must settle the question. Appellants claim that it is against all of the evidence, and this claim must be examined. The letter of November 25th, with accompanying papers and statements, are relied on by appellants as demonstrating *Mayhew's* knowledge of the sale to *Baltz* when he received the check. Examination of these papers shows that they nowhere state that the cheese had been sold to *Baltz*. The most that they show positively is that on the 18th of November *Baltz* was negotiating for the purchase. An inference might be drawn that the sale had been made, but it would be an inference merely. It is true that *Mayhew* stated in his evidence that he first found out that *Baltz* had bought the cheese when *Mather* sent the bill, but he also states positively that he went to *Baltz's* warehouse after receiving the check, and saw *Mr. Baltz*, and told him the cheese had not been settled for, and *Baltz* said he had made *Mather* an offer for the cheese, but didn't.

know whether he would take it up or not. In this state of the evidence it was certainly a question proper to be submitted to the jury as to when he obtained knowledge of the sale to *Baltz*. They have answered the question. There was evidence to base their answer upon, and the answer must be considered as settling the fact. Furthermore it is apparent that mere knowledge of the sale to *Baltz* is not necessarily knowledge that *Mather* was not acting as agent for Smith & Co. It might easily be that Smith & Co. had, for reasons of their own, ordered the sale to *Baltz*. Mather's agency and the sale to *Baltz* are not necessarily inconsistent.

The appellants strenuously contend that all the material issues in the case have not been disposed of. This contention necessitates an examination of the evidence and pleadings to ascertain what facts are established without dispute. Such an examination discloses that such facts are: (1) That the cheese in question was originally the property of the plaintiff; (2) that *Mather* purchased it in some capacity, November 1, 1889; (3) that *Mather's* first purchase during the season, and the following purchases for about two months, were made avowedly to fill orders from William E. Smith & Co.; (4) that with the exception of some lots ordered specially, the cheese continued to be stenciled "William E. Smith & Co." through the whole season, and that plaintiff received no direct notice of any change in the relationship of *Mather* and William E. Smith & Co.; (5) that *Mather* did not in fact purchase the lot in question as agent for Smith & Co., but upon his individual account; (6) that he sold the cheese to *Baltz* some time in November; (7) that *Mather* sent the plaintiff the check for $143.13 November 25, 1889, and that plaintiff immediately cashed it; (8) that plaintiff tendered back the money received on the check just prior to the commencement of the action, and demanded back the cheese; (9) that the cheese was

worth at least .seven and one-half cents per pound when sold by *Mather* to *Baltz*. In addition to these facts the following facts are settled by the verdict: (1) That the plaintiff understood when he sold the cheese that he was selling it to William E. Smith & Co. (2) That *Mather* knew that plaintiff sold the cheese with this understanding. This, we think, is the necessary effect of the second finding of the jury, in view of the other facts. (3) That plaintiff did not know of the sale to *Baltz* until about the time he commenced suit.

Putting these two classes of facts together, it is evident that the plaintiff was in a position, as against *Mather* at least, to replevin the cheese. He understood from his dealings with *Mather* that he was selling it in fact to William E. Smith & Co., and was evidently justified in such belief. *Mather* knew he sold it with that understanding, and did not undeceive him, but took the cheese. This amounts substantially to a purchase by *Mather* under a false representation that Smith & Co. were the purchasers, and that he (*Mather*) was simply acting as their agent. Such a sale transfers no title. 1 Benj. Sales (4th Am. ed. by Corbin), sec. 640, note 16, and cases cited. Nor does *Baltz* stand in any better position, because *Mather* had no title to transfer to him. See *Moody v. Blake*, 117 Mass. 23, where the principle is well stated. It was unnecessary, therefore, to determine whether *Baltz* purchased in good faith or without notice. Nor was it necessary to submit to the jury the question whether *Mayhew's* rescission was made within a reasonable time, because, the verdict having established the fact that he did not learn of the transfer to *Baltz* till about the time the suit was commenced, and the undisputed evidence showing that he offered to refund the money received on the check just prior to the service of the summons, it is evident that the rescission was immediate upon acquiring knowledge of the facts entitling him

thereto, and if immediate it was certainly within a reasonable time.

Exception is taken because the circuit court made a formal finding of facts in the case. So far as these facts cover ground not covered by the verdict, they are based on undisputed testimony. We see no objection to such a practice. Such a finding should, of course, be confined to undisputed facts. When so confined, taken in connection with a verdict settling the disputed questions, it would seem to afford a consistent foundation embodied in the record upon which to place the judgment.

Exceptions were taken to a number of rulings of the trial court. In the view which we have taken of the case, we are unable to see that any injury could possibly have resulted to the defendants from any of the rulings, even if they were erroneous. We do not deem it necessary to state them.

The judgment must, however, be reversed, because it was simply a money judgment. Under the statute (R. S. sec. 2888) the judgment should have been for the possession of the property, or the value thereof in case a delivery cannot be had. The plaintiff could not waive the recovery of the property and take a money judgment. He only has that option when he has actually obtained the property by proceedings for immediate delivery under ch. 123, R. S., and the defendant has furnished the proper undertaking and secured its return. No such state of facts exists here.

The plaintiff must pay into court, for the benefit of defendant *Mather*, the money received on the check, viz., $143.13, and thereupon judgment should be entered in the alternative for the return of the cheese or its value in case a delivery cannot be had. Should plaintiff decline to pay said money into court within a time to be fixed by the circuit court, judgment should be entered for the defendants.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.