**MET–AL, INC., Plaintiff,**

v.

**HANSEN STORAGE COMPANY, Distribution Express, Inc., and Metal Brokers International, Inc., Defendants.**

No. 93–C–479.

United States District Court,
E.D. Wisconsin.

Feb. 4, 1994.

Donald H. Carlson, Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for Met–Al, Inc.

Jeffrey J. Liotta, Hinshaw & Colbertson, Milwaukee, WI, for Distribution Express, Inc.

John F. Horvath, Horvath & Lieber, Chicago, IL, Ronald L. Piette, Piette & Jacobson, Milwaukee, WI, for Hansen Storage Co. and Home Ins. Co.

Mark L. Metz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Metal Brokers Intern., Inc.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Before the Court is defendant Distribution Express, Inc.'s ("DEI's") Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(6) ("Rule 60(b)(6)") in the above-referenced matter. For the following reasons, the motion is denied.

### I. LEGAL AND FACTUAL BACKGROUND

Plaintiff Met–Al, Inc. ("Met–Al") is an aluminum ingot producer which lost over $4 million when defendant Metal Brokers International, Inc. ("MBI"), an unscrupulous aluminum broker, set up phony transactions, diverted aluminum from Met–Al's "intended" customers, and failed to pay for goods delivered. *Met–Al, Inc. v. Hansen Storage Co.*, 828 F.Supp. 1369, 1371–75 (E.D.Wis.1993) (Warren, J.).[1] Met–Al filed suit, claiming, *inter alia*, that DEI, the carrier of the aluminum, and defendant Hansen Storage Company ("Hansen"), the warehouser of the aluminum, were liable for its losses based on their failure, upon MBI's request, to honor the shipping terms of the original bills of lading. *See id.*

The parties filed cross-motions for partial summary judgment; on July 22, 1993, the Court found DEI liable to Met–Al under the Federal Bill of Lading Act ("FBLA"), 49 U.S.C.App. § 81, *et seq.*, and § 407.403 of the Wisconsin Statutes because it followed MBI's shipping instructions even though Met–Al, and not MBI, retained a continuing right to immediate possession of the goods and lawful title. *Id.* at 1381–83. However, we found Hansen not liable to Met–Al under Wisconsin

---

1. The details of MBI's scheme were set forth fully by this Court in our Summary Judgment Order of July 22, 1993.

law because Hansen (1) never converted the goods by exercising "wrongful control," (2) was not a "bailee" to Met–Al, and (3) owed no duty to Met–Al that could serve as a basis for actionable negligence. *Id.* at 1383–85. As a result, the Court denied Met–Al's partial motion for summary judgment against Hansen and DEI's motion for summary judgment, and granted Met–Al's partial motion for summary judgment against DEI and Hansen's motion for summary judgment. *Id.* at 1385.

## II. *LEGAL FRAMEWORK*

■ "Rule 60(b) is a rule of general application, providing relief from all types of final judgments." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984). A motion thereunder seeks an "extraordinary remedy," *Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 188 (7th Cir.1985); *C.K.S.*, 726 F.2d at 1204–05, and is granted only if the movant shows "[exceptional] circumstances that create a substantial danger that the underlying judgment was unjust." *Nelson v. City Colleges of Chicago*, 962 F.2d 754, 755 (7th Cir.1992). *Accord Del Carmen v. Emerson Elec. Co., Commercial Cam Div.*, 908 F.2d 158, 161 (7th Cir.1990); *3 Penny Theater Corp. v. Plitt Theaters, Inc.*, 812 F.2d 337, 340 (7th Cir.1987). A Rule 60(b) motion is not a substitute for direct appeal, *Del Carmen*, 908 F.2d at 161; *Andrews*, 771 F.2d at 188, or a motion to alter or amend judgment under Rule 59(e). *Parke–Chapley Constr. Co. v. Cherrington*, 865 F.2d 907, 915 (7th Cir. 1989). Nevertheless, the "stringent standards [of] Rule 60(b) 'should be liberally applied to accomplish justice,'" *Andrews*, 771 F.2d at 188, and a motion thereunder "may be granted at the broad discretion of the trial judge." *Del Carmen*, 908 F.2d at 161 (quoting *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1277 (7th Cir.1990)).

■ Subsection (6) of Rule 60(b) provides as follows:

"[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (6)

any other reason justifying relief from the operation of the judgment."

Although Rule 60(b)(6) acts as a "catch-all provision," *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 683 (7th Cir.1983), it is not as open-ended as its language or nickname suggest. Relief is available thereunder only if subsections (1) through (5) are inapplicable and the district court, in its sound discretion, finds equitable action necessary to accomplish justice. *Peacock v. Board of Sch. Comm'rs of City of Indianapolis*, 721 F.2d 210, 214 (7th Cir.1983) (per curiam). Finally, a Rule 60(b)(6) motion must be made "within a reasonable time" after judgment was entered. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992).

## III. *DISCUSSION*

### A. Parties' Arguments

According to DEI, this Court wrongly found that, because Met–Al did not *intend* to sell its aluminum to MBI, MBI did not have voidable title of the goods in question and was therefore not "lawfully entitled to possession" under the FBLA. It claims that, in reaching this conclusion, this Court relied on two state common law cases, *Mayhew v. Mather*, 82 Wis. 355, 52 N.W. 436 (1892), and *Phelps v. McQuade*, 220 N.Y. 232, 115 N.E. 441 (1917), which "have been superseded by the Uniform Commercial Code ('UCC') and thus do not govern this dispute." DEI asserts that, pursuant to § 2–403(1)(a) of the UCC as interpreted by its Official Comments and other authorities, MBI held voidable title to the aluminum under a "transaction of purchase" because, regardless of its intent, Met–Al *voluntarily* surrendered its wares to MBI. With voidable title, DEI claims that MBI was "lawfully entitled to the possession of the goods, ... [and] DEI's delivery of the aluminum according to MBI's instructions [and in violation of the bills of lading] was proper under the FBLA." Furthermore, DEI argues that the Court should have applied federal, rather than state, UCC law to interpret this provision of the FBLA. Alternatively, DEI claims that, under state common law, Met–Al's intent in delivering its aluminum to MBI remains a question of material fact precluding summary judgment. Finally,

DEI argues that the Court did not address its contention that MBI was the true "shipper" of the goods in question, thus immunizing DEI from FBLA liability for violating the terms of the bills of lading. *See Wis. Stat.Ann.* § 407.303(1)(a) (West 1964).

Met–Al responds that, because *Mayhew* and *Phelps* remain effective despite the passage of the UCC, "[t]his [C]ourt [properly] rejected the premise that MBI had voidable title, an unidentified term under the Code." The plaintiff argues that, in such circumstances, UCC commentators "have concluded that pre-Code state law continues to be available to aid in interpretation of the Code." Met–Al also claims that a "transaction of purchase" under § 2–403(1)(a) never occurred between it and MBI. Specifically, because UCC § 2–401 provides that rights, obligations, and remedies of parties apply "irrespective of title to the goods," Met–Al concludes that "the question of MBI's title is independent of any issue of right to possession." Therefore, because "[t]he only right granted under Sec. 2–403 is the right of a bona fide purchaser to obtain good title from *one who has purchased* [and gained title to] goods," and "[n]either the Code section, nor any of the commentaries, suggest that the 'voidable title' referred to in Sec. 2–403 is obtained by anyone other than a 'purchaser,'" Met–Al asserts that MBI lacked "authority to re-direct the goods" in question irrespective of any possessory interest. Finally, the plaintiff argues that no genuine issue of material fact exists as to (1) its intention to sell aluminum to purchasers other than MBI, and (2) its, and not MBI's, identity as the true "shipper" of such goods.

## B. Analysis

As previously indicated, DEI brought this motion on August 25, 1993, approximately one month after this Court issued its summary judgment ruling; Met–Al does not dispute that DEI has met Rule 60(b)(6) timeliness requirements. As a result, because Rules 60(b)(1) through (5) are clearly inapplicable, DEI's request should be granted if the Court finds that relief from judgment "is necessary to accomplish justice." *See Peacock,* 721 F.2d at 214.

### 2. *Application of Mayhew and Phelps in determining "voidable title" under UCC § 2–403(1):*

Under the FBLA, DEI was required to deliver the aluminum ingot in this case to either "a person lawfully entitled to the possession of the goods, or the consignee named [in the bill of lading] for the goods." 49 U.S.C.App. § 89(a–b). In our summary judgment order, we noted that whether MBI was "lawfully entitled" to such possession "depends upon whether Met–Al retained a possessory interest in the aluminum once shipped, *and whether MBI obtained title, and of what kind, to the aluminum.*" *Met–Al,* 828 F.Supp. at 1378. Applying *Mayhew* and *Phelps,* we found that MBI could not transfer good title to DEI (assuming it was a good-faith purchaser for value) under UCC § 2–403(1) because MBI obtained void, rather than voidable, title to the goods. *Id.*

▮ In so applying *Mayhew,* the Court considered the extent to which the Wisconsin state legislature intended UCC § 2–403(1) to supersede state common law. As an initial matter, the Constitution of Wisconsin, adopted in 1848, provides that "such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature." *Wis. Const.* art. 14, § 13. As a result, the Wisconsin Supreme Court has held that state statutes "are not to be construed as changing the common law unless the purpose to effect such change is clearly expressed therein [by] clear, unambiguous and peremptory [language]." *Wisconsin Bridge & Iron Co. v. Ramsay,* 233 Wis. 467, 474, 290 N.W. 199, 202 (1940) (quoting *Meek v. Pierce,* 19 Wis. 300, 303 (1865)). *See also, e.g., In re Estate of Ogg,* 262 Wis. 181, 191, 54 N.W.2d 175, 179 (1952); *Leach v. Leach,* 261 Wis. 350, 357–59, 52 N.W.2d 896, 898–99 (1952). Because newly-adopted judicial decisions have "traditionally been regarded as expression[s] of pre-existing law," *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 847, 110 S.Ct. 1570, 1582, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring), courts must consider the "law of voidable title" as stated in *Mayhew* to be part of

Wisconsin common law as adopted by the state constitution. Therefore, this Court properly applied *Mayhew* in the underlying motion if, by doing so, we violated neither the explicit language nor the underlying policy of the UCC.

 Regarding the former, the UCC contains no "clear, unambiguous and peremptory language" superseding the entire law of commercial agreements as embodied under common law. UCC § 1–103, in fact, explicitly states that "[u]nless displaced by the particular provisions of this code the principles of law and equity, including the law merchant ... shall supplement its provisions." *Wis. Stat.Ann.* § 401.103 (West 1964). In adopting this presumption, the UCC drafters intended *"the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act." Id.* at 16 (Official UCC Comment to § 1–103). As a result, the plaintiff properly argues that pre-Code case law is available to aid in interpretation of the UCC *unless violative of its specific provisions.*

UCC § 2–403(1), in turn, states in relevant part that:

"(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with *voidable title* has power to transfer a good title to a good-faith purchaser for value. When goods have been delivered under a *transaction of purchase,* the purchaser has such power even though:

(a) The transferor was deceived as to the identity of the purchaser ...

(d) The delivery was procured through fraud punishable as larcenous under the criminal law."

*Wis.Stat.Ann.* § 402.403(1) (West 1964) (emphasis added). Under the second sentence, anyone with "voidable title" to goods, however received, may transfer good title to a good-faith purchaser for value; however, as acknowledged by both parties, "voidable title" is not defined by the UCC or discussed in the Official UCC Comment to § 2–403(1).

Absent such guidance, this Court properly invoked the common law principles of *Mayhew* in determining that MBI did not have "voidable title," and therefore could not transfer good title, of the aluminum provided by Met–Al pursuant to second sentence of § 2–403(1). *See, e.g., Hollibush v. Ford Motor Credit Co.,* 179 Wis.2d 799, 508 N.W.2d 449 (Wis.Ct.App.1993).

The third above-cited sentence, however, extends this transfer power in very limited circumstances; that is, a person who may otherwise lack "voidable title" under common law, and is therefore not covered by the second sentence of § 2–403(1), nevertheless transfers good title to a good faith purchaser in four delineated instances *if* that person (1) was "delivered" the goods (2) in a "transaction of purchase." The Official UCC Comment to § 2–403(1) states that this "provides specifically for the protection of the good faith purchaser for value in a number of specific situations which have been troublesome under prior law," 40A *Wis.Stat.Ann.* 262 (West 1964), and the Wisconsin Annotations to § 2–403(1) drafted by the Wisconsin Legislative Council in its 1961 Report noted that "the Code does not attempt to state when a title is voidable (as distinguished from void) except in the 4 situations mentioned in paragraphs (a), (b), (c), and (d)." *Id.* at 261. The third sentence of § 2–403(1), then, qualifies the second by giving four specific instances in which a person who is delivered goods in a "transaction of purchase" and does not hold "voidable title" under common law is nevertheless deemed to have authority to pass good title to a good faith purchaser.

 In this case, however, the third sentence does not apply because Met–Al did not deliver the aluminum to MBI under a "transaction of purchase." Under the UCC, a "purchase" is the "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift *or any other voluntary transaction creating an interest in property." Id.* at § 401.201(32) (emphasis added). The Fifth Circuit interpreted the latter phrase in *American Standard Credit, Inc. v. National Cement Co.,* 643 F.2d 248 (5th Cir.1981), a case where a seller of mining equipment, Vulcan, entered into a lease-purchase agree-

ment with NATISCO after it had already sold the machinery to PSI. Both purchasers then transferred partial interests to third parties; NATISCO by security agreement to ASCI, and PSI by lease agreement to ICC (who subleased the equipment to VERCO). Conflicting claims soon arose, and ASCI sued, *inter alia*, the trustee for Vulcan, PSI, ICC, and VERCO. Assuming that NATISCO was a "good faith purchaser for value" under § 2–403(1), the Fifth Circuit, clearly aware that Vulcan's sale to PSI precluded it from having common law "voidable title" pursuant to the second sentence of § 2–403(1), instead invoked subsection (d) of the third sentence. *Id.* at 268. It noted that, under subsection (d):

> "[f]or the seller to have obtained even voidable title, he must have obtained delivery of the goods through 'a transaction of purchase.' While this phrase has been defined broadly by various courts, *it is generally limited to those situations in which the party who delivered the goods to the subsequent seller intended, however misguidedly, that the seller would become the owner of the goods.* Thus, the con artist who fraudulently induces a manufacturer to deliver goods to him by means of a forged check has voidable title because he obtained delivery through a transaction of purchase, even though the defrauded manufacturer could bring criminal charges against the con artist ... *But if the con artist merely converts the goods to his own use after having obtained possession of them in some manner other than a transaction of purchase, he does not have even voidable title; instead, he has void title, and cannot pass good title even to a good faith purchaser for value.*"

*American Standard*, 643 F.2d at 268 (emphasis added). As a result, the Fifth Circuit found "no evidence ... which could support a finding that Vulcan obtained possession of [the machinery] by means of a "transaction of purchase with PSI prior to the second sale." *Id.* *See also Textile Supplies, Inc. v. Garrett*, 687 F.2d 123, 127 (5th Cir.1982) (finding that a salesman who intercepted his employer's goods in transit, redirected them to another buyer, and absconded with payment "acquired only 'void title.' ") Similarly,

Met–Al clearly did not intend in this case for MBI to become "the owner of the goods;" as a result, MBI did not obtain the goods under a "transaction of purchase," the above-cited third sentence does not apply, and, as previously indicated, MBI possessed void, rather than voidable, title.

■ In addition, because MBI never gained possession of the aluminum, its agreement with Met–Al "created no interest in property" as required in a "transaction of purchase." Recall how MBI's fraudulent scheme worked:

> "Green [MBI's owner] coordinated the delivery of the aluminum ingots from Met–Al's facility to other warehouses. Either he or John Reinke, MBI's traffic manager, would advise Met–Al that Emerson or GE [the 'intended purchasers'] needed a certain type and amount of aluminum and that the aluminum would be picked up on a certain date. Met–Al would then set the requested aluminum aside and complete the necessary documentation ...
>
> In a typical transaction, John Reinke would notify the DEI drivers about the aluminum waiting at Met–Al's facility. The drivers would proceed to Met–Al's loading dock and announce that they were there for Emerson's aluminum. The aluminum would then [be] loaded onto the trucks, and DEI would issue a bill of lading naming Met–Al as the shipper ... These slips listed Green as a salesman ...
>
> After issuing the bills of lading, DEI would transport its cargo to Hansen, where it leased space, and unload it in its cross-docketing area ... Once the cargo was in the warehouse, MBI would order DEI to issue another bill of lading, which changed the name and address of the consignee. DEI, as MBI's client, would always comply, even though the new bills of lading were inconsistent with the old ones. Met–Al was neither notified nor consulted about the changes."

*Met–Al*, 828 F.Supp. at 1372–73 (references omitted). MBI, then, never obtained the right to present or future possession, title, or security in the goods. As a result, its agreement with Met–Al, while creating an interest

in brokerage profits, did not "create an interest in property," and no "transaction of purchase" occurred as required under § 2–403(1)(a).

Furthermore, our application of *Mayhew* in determining whether MBI obtained "voidable title" of the aluminum supplied by Met–Al does not violate the policies underlying § 2–403(1). DEI argues that, because the Wisconsin Annotations to § 2–403(1) cite *Mayhew* as contrary authority, the Court wrongly applied it in our summary judgment order. *See* 40A *Wis.Stat.Ann.* 261 (West 1964). In *Mayhew,* the plaintiff contracted to sell cheese to William E. Smith & Co. ("Smith") through Smith's purported agent, Mather; the cheese was stenciled with the Smith's name, *but possession was given to the defendant. Mayhew,* 82 Wis. at 359, 52 N.W. at 438. After several months of shipment, the plaintiff discovered that Mather was attempting to sell the cheese to other parties and sought to rescind the contract. As stated by this Court:

> "[t]he [*Mayhew*] Court found that, because Mather had purchased the cheese while falsely claiming to be Smith's agent, no title had passed. Even a good faith purchaser, the Court found, could not have obtained good title from a seller like Mather, and thus would have been at risk in any action by the original owner."

*Met–Al,* 828 F.Supp. at 1380 (citations omitted).

*Mayhew,* however, is only cited in the Wisconsin Annotations as contrary authority to § 2–403(1)(a), which, we saw, only applies if a deceiving party obtains goods in a "transaction of purchase;" such a transaction occurred in *Mayhew,* but not in this case, because the defrauder obtained actual possession of the goods. It is sensible to treat these cases differently under § 2–403(1) if, as the defendant argues, it was designed to "place the risk of fraud on the party best able to guard against it." A transferor who voluntarily delivers goods to an imposter has clearly cloaked the deceiver with the "indi-

cies of ownership" sufficient to fool unwitting third party purchasers as to the true holder of title; a transferor who has *not* so delivered goods (or documents of title), on the other hand, has transmitted no possessory or other property interest which could readily deceive third parties as to the true ownership of the goods. As a result, because Met–Al did not deliver its goods to MBI, DEI was in a better position than Met–Al to guard against MBI's fraudulent assertion of ownership interest in the aluminum. This policy, coupled with the strict liability imposed on a carrier who wrongly delivers goods in violation of a bill of lading, *see, e.g., EF Operating Corp. v. American Bldgs.,* 993 F.2d 1046, 1050 (3d Cir.1993), explains why Mather and other agents in possession, and not MBI, are governed by § 2–403(1)(a). As a result, this Court properly applied *Mayhew* [2] in finding that MBI obtained void, rather than voidable, title under § 2–403(1), and therefore was not "lawfully entitled to the possession" of the goods under the FBLA.

■ Finally, we reject DEI's claim that "intent" issues present questions of fact which cannot be resolved in summary judgment. Such issues, like other disputed claims, may be decided in summary judgment if uncontroverted or not relevant to the underlying claim. The evidence in this case clearly indicates that Met–Al had no intention of selling its aluminum to MBI; DEI has presented no evidence to the contrary, and no reasonable jury could find otherwise. Therefore, we reaffirm that no genuine question of material fact exists as to the deceit imposed on Met–Al by MBI, that MBI did not obtain transferable title to the aluminum, and that summary judgment was properly entered in favor of Met–Al as a matter of law.

### 3. The identity of the shipper of the aluminum ingots:

■ Similarly, no genuine question exists as to the fact that Met–Al, and not MBI, was the shipper of the goods at issue. As noted

2. DEI also argues that the Court should have applied federal common law as embodied in *Chicago, M., St. P. & P.R. Co. v. Flanders,* 56 F.2d 114 (8th Cir.1932), rather than *Mayhew,* in deciding whether MBI obtained "voidable title" of the aluminum pursuant to the second sentence of

§ 2–403(1). However, we are interpreting the Wisconsin UCC; and, as indicated in our summary judgment ruling, the facts in this case most closely approximate those in *Mayhew. Met–Al,* 828 F.Supp. at 1379.

492

by the plaintiff, "Met–Al is identified as the shipper in bold letters on each and every one of the hundreds of bills of lading which are the subject of this action," *Met–Al,* 828 F.Supp. at 1376; and, as previously indicated, bills of lading are contracts of adhesion which are strictly construed against the carrier. *EF Operating,* 993 F.2d at 1050. It would certainly be inappropriate for this Court to consider extraneous evidence in light of such clear and unambiguous contractual language and DEI's forewarning of its strict liability for wrongful delivery. Nor has DEI presented any persuasive evidence to support its claim; instead, it cites selected portions of the summary judgment order in concluding that "the Court found that *MBI contracted with DEI* to transport aluminum from Met–Al's place of business." DEI, however, mistakingly concludes from the Court's description of MBI's role as the broker of the delivery agreement that it was the shipper of the goods. As a broker, MBI simply facilitated the contract between Met–Al, the shipper listed on the bill of lading, and DEI, including communicating with and tendering payment to the carrier. Clearly, any reasonable carrier in DEI's position would have, at a minimum, contacted the party listed in the bills of lading as shipper before transporting millions of dollars of its goods to a new destination at the direction of an unlisted party. *See Met–Al,* 828 F.Supp. at 1381. Further undercutting DEI's claim is the fact that, had MBI truly asserted itself as the shipper of the goods, Met–Al would certainly have questioned the identity of its "intended" purchasers and exposed MBI's scheme much earlier. As a result, we reaffirm our finding that no reasonable jury could conclude that MBI was the true "shipper" of the aluminum supplied by Met–Al in this case.

### IV. *SUMMARY*

For the foregoing reasons, the Court hereby **ORDERS** that the plaintiff's Motion for Reconsideration pursuant to Rule 60(b)(6) be **DENIED** in the above-referenced matter.

**SO ORDERED.**