Lee and others, Appellants, vs. Burnham, Respondent.

*April 13 — May 3, 1892.*

*Sale of chattels: Rescission for fraud: Election: Replevin: Reliance upon
false representations: Court and jury.*

1. An action for the purchase price of goods is not such an election to
affirm the sale as will prevent a subsequent action of replevin for
the goods on the ground that the sale was induced by false repre-
sentations, where such prior action was brought by direction of the
vendors' agent without their knowledge or consent and in igno-
rance of the representations or their falsity, and where the vendors
dismissed that action as soon as they learned of it.

2. Nor is an attachment suit, brought subsequently to the replevin ac-
tion and upon a part of the indebtedness not included therein, an
election as to any matter involved in such replevin action.

3. It appearing in the replevin action that plaintiffs also consulted the
reports of collecting agencies with reference to the vendees, the
question whether they relied upon the information thus obtained
or upon the statements of the vendees as the inducement to sell the
goods, was a question of fact for the jury.

APPEAL from the Superior Court of *Milwaukee* County.
The facts are sufficiently stated in the opinion.

For the appellants there was a brief by *Burke & Hiles,*
and oral argument by *J. F. Burke.* They argued, among
other things, that it was for the jury to decide whether the

Lee and others vs. Burnham.

plaintiffs relied upon the representations of Brackel & Engelke entirely, or to what extent they did rely upon those representations. *Clark v. Dickson*, 6 C. B. (N. S.), 453; *Morgan v. Skiddy*, 62 N. Y. 319. The presumption is that plaintiffs did rely upon the false and fraudulent statements of the firm, unless there is evidence to the contrary. *Holbrook v. Burt*, 22 Pick. 546; *Fishback v. Miller*, 15 Nev. 428; *Redgrave v. Hurd*, L. R. 20 Ch. Div. 1.

For the respondent there was a brief by *Turner & Timlin*, and oral argument by *W. J. Turner.* They contended, *inter alia*, that as the plaintiffs sought and obtained other information and acted thereon in giving the credit, they cannot avail themselves of any misrepresentation. Kerr, Fraud & M. 75; 1 Bigelow, Fraud, 521.

ORTON, J. This is an action of replevin, brought by the plaintiffs, merchants of New York city, to recover certain goods alleged to have been purchased and obtained from them by the firm of Brackel & Engelke, of the city of Milwaukee, by false and fraudulent representations, from the defendant as sheriff of Milwaukee county, who held them under certain executions against Brackel & Engelke in favor of several of their creditors. The case was tried before the court and jury, and at the end of the testimony the court, on motion, directed the jury to find a verdict for the defendant; and this appeal is from the judgment entered thereon. The following appear to be substantially the facts according to the testimony:

In July, 1887, one George M. Hugo, the dry goods salesman of the plaintiffs, obtained from said firm in Milwaukee the following statement of their financial circumstances with the view of selling them goods on time, as follows, viz., they started in business in the spring of that year, with a cash capital of $5,000 of their own money, and had more money to put into the business if necessary. On this state-

ment the plaintiffs sold said firm the first bill of goods, and continued to sell them goods from time to time until a short time before the commencement of this action in 1890, relying upon the truth of said statement, and upon their further statement, from time to time thereafter, that they were doing a good business and making money and thus adding to their capital. When the plaintiffs first ascertained that these representations were untrue, in 1890, the balance of their claim against the firm for goods so obtained was about $3,000. The truth was that said firm had no cash capital whatever of their own money, and that they had commenced business on borrowed money alone, and they never did a good business, and did not make money or add to their capital; but, on the contrary, they were probably insolvent all the time, and in 1890 they were indebted to various creditors besides the plaintiffs in the aggregate sum of about $20,000, and before the commencement of this action had made an assignment for the benefit of their creditors. The said $20,000 of their indebtedness was represented by the judgments on which the executions were issued and levied upon their goods, and by which the defendant as sheriff held them. It appears that said firm of Brackel & Engelke commenced business in the spring of 1887, without any capital of their own; not only made nothing, but lost money, and in 1890 were grossly insolvent; and that the money they borrowed to commence business on is a part of the indebtedness for which one of said judgments was rendered.

These facts appear to be established by the plaintiffs' evidence. On the other hand, the said firm denied that they had made any such representations, but do not seem to have denied that they were false if made. It was shown that before this action was commenced the plaintiffs brought suit on some of the indebtedness for which the goods were sold. This, it was claimed, affirmed the contract by the

election of the plaintiffs. But it was shown also that said suits were ordered by one of the agents of the plaintiffs, without special direction from them, and when the agent had no knowledge of said representations or of their falsity; and before this suit was brought said actions were discontinued by the plaintiffs. There was evidence also that in 1887, and perhaps afterwards, the plaintiffs consulted the reports of collection agencies as to the standing of said firm as merchants. But such reports did not pretend to give their actual financial condition, but related only to their character, reputation, habits, history, and general standing as merchants. It was also shown that after this suit was brought the plaintiffs brought suit in attachment on a part of their indebtedness not included in this suit, and attempted to have the defendant account for the goods in his hands, by showing that the judgments were invalid. It was on this state of facts that the court directed a verdict for the defendant.

1. The commencement of the actions before this suit was brought was no *election* on the part of the plaintiffs, because the agent who did so, without their knowledge or direction, did not know of the representations or their falsity; and as soon as they ascertained that said actions were commenced they discontinued them and brought this suit in replevin, disaffirming the contract. This, in reason, was no *election* to affirm it, and the authorities cited by the learned counsel of the respondent so hold. *Hays v. Midas,* 104 N. Y. 602; *Equitable C. F. Co. v. Hersee,* 103 N. Y. 25; *Terry v. Munger,* 121 N. Y. 161.

2. As to the action brought by the plaintiffs after this suit was commenced on a part of the indebtedness not included in this action, it was no election as to any matter involved in this action. In *Singer v. Schilling,* 74 Wis. 369, the plaintiff brought replevin for a part of the goods obtained by fraud, and afterwards brought an action for the

conversion of a part that had been previously sold, to enable him to garnishee the assignee. It was held that by bringing this action the plaintiff waived the tort as to that part of the indebtedness, but that by none of these acts did the vendor affirm the original sale or lose the right to recover in the action of replevin.

So far, then, there was nothing to prevent the jury from rendering a verdict in favor of the plaintiffs on the ground that the goods were obtained by such false and fraudulent representations, for they would have had the right to believe the testimony of the plaintiffs. It is suggested that the court ordered a verdict for the defendant on the ground that the plaintiffs consulted the reports of the collecting agencies, and therefore must have relied upon the information so obtained, rather than upon the representations of said firm. The information so obtained was not the same as that imparted by the statement of the firm. The latter was of their *actual* financial condition, their actual capital and ability to pay for the goods they bought of the plaintiffs on short time. This information was far more material, important, and reliable than that obtained from the reports. One of the revised and fullest reports which they consulted contained this cautious reservation: "But it is impossible to get any definite estimate of their net worth;" meaning the *net worth* of the firm. The testimony of the plaintiffs was that they relied all the time on the truth of these representations of the firm, and only found out that they were false a short time before this action was brought. The jury had a right to so find, if they had been allowed to do so. But if these reports of the agencies had been of precisely the same facts as the statements of the firm, the plaintiffs would have had the right to rely upon both; one as corroborating the other. If they relied upon the statements of the firm as the inducement of the sales to any extent, it was sufficient. *Morgan v. Skiddy*, 62 N. Y.

Lee and others vs. Burnham.

319.   The question was, Did the firm, in making the representations, intend to defraud the plaintiffs or to deceive and induce them to make the sales? All these were questions of fact for the jury and not for the court. There is nothing in the case conclusive against the plaintiffs' recovery, as there should have been to justify taking the case from the jury and ordering a verdict for the defendant. The jury would have been justified on the facts in rendering a verdict for the plaintiffs.

The case of *Singer v. Schilling*, 74 Wis. 369, is very much in point in almost all respects. That was replevin of the goods obtained by similar representations, and there was evidence that the plaintiff obtained other information of the financial standing of the vendee, and the court directed a verdict for the defendant, as here. Chief Justice Cole said in the opinion: "The plaintiff claimed and attempted to prove that he was induced to make the sale by the fraudulent representations of the vendee as to his financial ability. On the other side it was attempted to be shown that the vendor did not rely upon any representations made by the purchaser, but sought from other sources information as to his financial standing, and acted upon the information which he thus obtained. It is very plain that the question whether or not the vendor in making the sale relied upon the false statements of the vendee was one which should have been submitted to the jury. It was error to withdraw the case, in view of that material fact, where there was a conflict of testimony upon it."

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.