WARNER, Respondent, vs. BENJAMIN and others, imp., Ap- pellants.

*December 15, 1894 — February 5, 1895.*

*Fraudulent representations: Sale of mining stocks: Notice of the facts: Measure of damages: Special verdict: Questions outside of the· issue: Expressions of opinion: Court and jury.*

1. In an action to recover damages for fraudulent representations by which plaintiff was induced to purchase mining stocks, there was evidence tending to show that, before she purchased, her husband and another person, who had investigated the mines, informed her· of their condition and advised her not to buy. *Held,* that it was. error to refuse to submit to the jury the question whether she had been so informed.

2. In such action the measure of damages is the difference between. the real value of the stocks at the time of the sale and what the value would have been had the representations been true: and the market value at or about the time of the sale is evidence bearing: on the question of the real value, though not necessarily con- clusive.

Warner vs. Benjamin and others.

3. The submission to the jury of questions in answer to which they found that the organization of several mining companies by defendants with a nominal capital largely exceeding the actual investment, and putting the stocks on the market for sale, was a fraud on plaintiff, who was a purchaser without notice of the facts,— is *held* to have been error, no such fraud having been charged in the complaint, and it appearing by plaintiff's own testimony that she did not rely on the statements of capital stock contained in her certificates.

4. A statement, made to induce the purchase of mining stocks, that it was impossible for the purchaser to lose on the investment and that the mines would pay dividends in the near future, was not an actionable false representation, being a mere opinion, prediction, or promise of a future condition of things.

5. Other representations having been made to the effect that the stocks were a good investment at the price paid; that the property was in a good and promising condition; that the mines were being rapidly developed; and that ore had been sold, or was ready to be sold, from some of them,— it was a question for the jury whether or not such statements were made and understood as mere expressions of opinion or predictions as to the future.

APPEALS from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an action to recover damages for fraudulently inducing the plaintiff to purchase worthless mining stocks. The complaint is set out at length in 75 Wis. 278, when this case was here on appeal from an interlocutory order. The answer of the defendant *Bates* was a general denial. The answer of the defendants *Benjamin* admits the purchase of mining stock by the plaintiff of the firm of Moore, Benjamin & Co.; denies all fraudulent or untrue statements, or that plaintiff relied on any information given her by defendants, but that she informed herself as to the facts; alleges that the stock, when sold, was worth what she paid for it, and afterwards greatly increased in value, and that the plaintiff had many opportunities to sell her stock at an advance, but refused to do so.

Upon the trial the jury returned a special verdict, wherein

they found: (1) That the plaintiff purchased from the defendants *Laura D. Benjamin*, Nathaniel D. Moore, and Elizabeth M. Bates, during the years 1886 and 1887, a large number of shares of the stock of certain iron mining companies upon the Gogebic range; the number of shares in each company and the amount paid for each share being separately set forth, and together amounting to about $15,000. (2) That, at the times of these several purchases, the defendant *H. S. Benjamin* was the agent of his wife, *Laura D. Benjamin*, in the business of the firm, and the defendant *Bates* was the agent of his wife, Elizabeth M. Bates, in the said business. (3) That the defendants, during the years 1886 and 1887, organized six of these iron mining companies by purchasing leasehold interests of land for various sums, ranging from $50,000 in one case to $242,000 in another case, and stocked each of said companies for $1,000,000. (4) That such capitalization and putting such stock upon the market for sale was fraud upon purchasers without notice. (5) That the plaintiff, when she purchased, had no notice of such facts. (6) That the defendant *H. S. Benjamin* represented to the plaintiff, at the time she purchased her stock, that each of said stocks was a good investment at the price she paid; that it was impossible for her to lose thereby; that the property represented by the stock was in a good and promising condition; that the mines were being rapidly developed; that ore had been sold, or was ready to be sold, from some of them; and that they, or some of them, would yield dividends in the near future. (7) That the plaintiff relied upon such representations and was induced thereby to purchase her stock. (8) That the defendant *Laura D. Benjamin* joined in and assented to such representations. (9) That the defendant *F. A. Bates* represented to the plaintiff that said mines, or some of them, were in a good or promising condition and were certain to pay dividends in the near future. (10) That the plaintiff relied upon the repre-

sentations made by *Bates* and was induced thereby to purchase stock or to retain stock after she had purchased it. (11) That the parties making said representations did not honestly believe them to be true when they made them. (12) That the defendant *H. S. Benjamin* offered to repurchase from plaintiff the stock held by her at a sum which would yield her a large profit, but that the defendants *H. S. Benjamin* and *F. A. Bates* advised her not to accept the offer. (13) That the plaintiff was deterred from accepting said offer by the advice and representations then made to her by the defendant *H. S. Benjamin.* (14) That the defendants and others organized a scheme in the summer of 1887 for the consolidation of the iron mining companies in which the plaintiff held stock, together with other companies, into a single company, to be called the Lake Superior Consolidated Mining Company, which scheme failed. (15) That the plaintiff knew of said scheme and assented to it. · (16) That she retained her stock in the original companies, instead of selling the same, for the purpose of availing herself of the anticipated benefits of such consolidation. (17) That she was advised and induced by the defendants to so retain her stock. (18) That such advice was not honestly given for the plaintiff's best interest, but for the purpose of keeping her stock out of the market. (19) That the plaintiff purchased her several stocks, and retained the same, for the purpose and in the hope of selling them at a profit. (20) That the plaintiff's damages amounted to $15,660.30.

Upon this verdict judgment was rendered for the plaintiff, and the defendants *Benjamin* and wife appealed, as did also the defendant *F. A. Bates.*

*W. J. Turner,* of counsel for the appellants *H. S. Benjamin* and *Laura D. Benjamin,* argued, among other things, that the plaintiff, being informed by her husband and Mr. Dixon of the condition and situation of the mines and of the speculative character of the property she was dealing in,

could not recover by reason of representations made to her. 1 Bigelow, Fraud, 521; 8 Am. & Eng. Ency. of Law, 643, subd. *c*; *Mamlock v. Fairbanks*, 46 Wis. 415; *Conner v. Welch*, 51 id. 431; *McEacheran v. Western T. & C. Co.* 97 Mich. 479; *Dickinson v. Lee*, 106 Mass. 557; *Slaughter's Adm'r v. Gerson*, 13 Wall. 379; *Gordon v. Butler*, 105 U. S. 553; *Southern D. Co. v. Silva*, 125 U. S. 247, 259. The measure of damages was the difference between the value of the stocks as they were at the time of the purchase, and what they would have been worth in the Milwaukee market at the time of the purchase, had they corresponded with the representations made.   1 Cook, Stock (3d ed.), § 586; *High v. Berret*, 148 Pa. St. 261; *Vail v. Reynolds*, 118 N. Y. 297; *Smith v. Bolles*, 132 U. S. 125; 3 Suth. Dam. § 1172; *Derry v. Peek*, 14 App. Cas. 337; *Fargo G. & C. Co. v. Fargo G. & E. Co.* 59 N. W. Rep. 1066.   There can be no recovery in this case because there is no finding of the jury that the representations were untrue. *Brandt v. Frederick*, 78 Wis. 6. In an action for deceit a recovery can be had only upon a representation as to an existing or past fact.   *Sheldon v. Davidson*, 85 Wis. 138; *Sawyer v. Prickett*, 19 Wall. 146, 161; *Robertson v. Parks*, 76 Md. 118, 135; *Weston v. Columbus S. R. Co.* 90 Ga. 289; *Hatch v. Spooner*, 13 N. Y. Supp. 642.

*Glenway Maxon*, for the appellant *Bates*.

For the respondent there was a brief by *Henry L. Buxton* and *Rose & Bell*, and oral argument by *Mr. Buxton*.

WINSLOW, J.   The record before us is quite voluminous, and there are many exceptions to rulings made upon the trial.   We shall not attempt to state these exceptions in detail, but shall simply lay down some general legal propositions upon some of the questions raised by the record, the rulings upon which we regard as erroneous.

1. There was evidence tending to show that the plaintiff

was informed by her husband and by one Dixon (who had been to the mines and investigated them) of their condition before she purchased stock, and that she was advised not to buy. The court was requested to submit the question to the jury whether she had been so informed or advised prior to her purchase, but refused to do so. This question should have been placed before the jury in some form. If the plaintiff had notice of the actual facts, or had knowledge of such facts as would have led to the discovery of the truth by the use of reasonable diligence, and failed to use such diligence, she cannot now say that she was defrauded in the purchase. She cannot close her eyes to the facts which are before her, or to the information which is at hand. *Mamlock v. Fairbanks*, 46 Wis. 415.

2. The court charged the jury on the question of damages that the plaintiff's loss was the true measure of her damages, and, it appearing that the stocks were of no present value, the jury assessed her damages at the amount which she paid for the stocks. This was erroneous. The evidence showed that for a considerable time after the plaintiff's purchases of stock there was a market value in Milwaukee for such stock, and that much of it had even risen in market value. The well-established rule of damages upon a sale of personal property which is voidable on account of fraudulent representations is the difference between the real value of the article sold at the time of the sale and what the value would have been had the representations been true. *Birdsey v. Butterfield*, 34 Wis. 52; 3 Suth. Dam. 591; *Vail v. Reynolds*, 118 N. Y. 297. Upon this subject the market value of the stock at or about the time of the sale is undoubtedly evidence bearing on the question of its real value, although not necessarily conclusive. 3 Suth. Dam. 591.

3. As will be seen by the special verdict, the court obtained from the jury, in answer to the third, fourth, and fifth questions, answers to the effect that the organizing of

several mining companies with a nominal capital of $1,000,000, representing an actual investment of a much less sum, and putting the stock on the market for sale, was a fraud on the plaintiff, who was a purchaser without notice of the facts. It is difficult to see on what theory these questions were submitted to the jury. The plaintiff charged no such fraud in her complaint, nor in any amendment thereto. She charged only certain specific false representations. The defendants were entitled to rely upon the issue which she presented them. But, even had this issue been presented, the plaintiff, by her own testimony, shows that she did not rely on the statement of capital stock contained in her certificate. She says that she does not know whether she ever thought about the certificate representing the property to be worth $1,000,000. Under these circumstances it was clearly error to submit these questions to the jury, as they had nothing to do with the case.

4. The representations which the jury found were made by *Benjamin* and by *Bates* will be found fully stated in the statement of the jury's verdict contained in the statement of the case herein. There are certainly some parts of these representations which do not amount to false representations. An actionable false representation must be one relating to an existing fact or past event. A mere opinion, prediction, or promise of a future condition of things is not a representation upon which a party has any right to rely. *Sheldon v. Davidson*, 85 Wis. 138. In the latter class of promises would certainly fall the statements that it was impossible for the plaintiff to lose upon her investment and that the mines would pay dividends in the near future. These alleged statements, therefore, are entirely immaterial. It may be that, as to the remaining false representations, they may form foundation for a recovery, although they certainly verge very closely upon expressions of opinion or mere prediction as to the future, and they might reasonably

be understood as such. The appellants asked that the question whether they were so made and understood be submitted to the jury, and we think such a question should have been submitted.

We have touched upon the main questions presented by the record, and do not deem it necessary to notice many minor questions which are raised but may not occur upon another trial.

*By the Court.*— Judgment reversed upon both appeals, and cause remanded for new trial.