BAKER and another, Appellants, vs. BECKER and another,
Respondents.

*April 10—April 29, 1913.*

*Trial: Special verdict: Answers, when changed or disregarded:
Sales: Corporate stock: False representations: Right to rely
thereon: Rescission: Placing vendor in statu quo: Waiver:
Judgment: Res judicata: Costs: Action on contract: Equitable
counterclaim.*

1. The trial court may properly change or disregard answers in a
   special verdict which, by the other answers and the evidence,
   are shown to be erroneous as a matter of law.
2. Representations made by the vendor of stock in a creamery com-
   pany, to induce its purchase, as to the amount of business done
   at the creamery, the competition in that locality, and the price
   received for manufacturing butter, do not relate to matters
   obvious upon inspection or equally open to both parties, but
   are such as a purchaser, although he may have visited and
   inspected the plant pending the negotiations, has a right to
   rely upon.
3. The purchaser of stock in a creamery company having made
   timely demand for rescission on the ground of fraud, the fact
   that the creamery was afterwards burned and that the wagons
   and milk cans were then sold does not defeat his right to en-
   force rescission in equity, on the ground that he cannot tender
   back all that he received or place his vendor *in statu quo*,
   where the money received for said equipment and the insur-
   ance money are held for such vendor either in the treasury of
   the company or by the clerk of the court.
4. A payment made by a purchaser of property upon the purchase
   price, before he has full information respecting the falsity of
   representations upon which he relied in making the purchase,
   will not constitute a waiver of his right to rescind.
5. If in two actions between the same parties the issues involved
   are the same, a determination of such issues in one action will
   be *res judicata* in the other.
6. Where the complaint states a cause of action at law upon con-
   tract the costs, exclusive of disbursements, are limited by
   sec. 2921, Stats., to $25, although the answer interposes an
   equitable counterclaim which becomes the principal subject of
   litigation.

APPEAL from a judgment of the circuit court for Waupaca
county: BYRON B. PARK, Circuit Judge. *Modified and af-
firmed.*

Action to recover on promissory note given in part payment of the purchase of a creamery. The defendants set up two counterclaims, one for the recovery of damages, and the other an equitable counterclaim setting forth alleged false and fraudulent representations made by the plaintiffs which induced the defendants to purchase the creamery and asking for rescission. The answer of *August E. Becker* alleges that after discovery of the fraud he demanded the return of his money and notes given as consideration for the purchase price, which demand was refused. Defendants pray judgment that they recover $250 with interest, and that the agreements for the purchase of the creamery be rescinded and the notes given by defendant *August E. Becker* be canceled and that plaintiffs be adjudged to secure and indemnify defendant *August E. Becker* from loss, and that the plaintiffs be adjudged to accept a reconveyance of the stock purchased by defendant *August E. Becker* and for the recovery of $575, and for such other and further relief as may be just and equitable. The defendant *John Becker* put in an answer asking that the complaint be dismissed and for general relief. There was a reply to the counterclaims denying generally the allegations thereof.

It was stipulated that in case of recovery by defendants the defendant *August E. Becker* should recover on his first counterclaim $250 and on his second $560.

The jury returned the following verdict:

"(1) Did the plaintiff *Wheeler* knowingly make false representations to the defendant *August E. Becker* as to the amount of business done by the Royalton Creamery Association? *A.* Yes.

"(2) If you answer question 1 'Yes,' then did the defendant *August E. Becker* rely upon said representations in making the purchase of said stock? *A.* Yes.

"(3) If you answer question 2 'Yes,' then did the defendant *Becker* have a right to rely upon such representations? *A.* No.

"(4) Did the plaintiff *Wheeler* knowingly make false representations to the defendant *Becker* as to competition at the Royalton Creamery? *A.* Yes.

"(5) If you answer question 4 'Yes,' then did the defendant *Becker* rely upon said representations in making the purchase of said stock? *A.* Yes.

"(6) If you answer question 5 'Yes,' then did the defendant *Becker* have a right to rely upon such representations? *A.* No.

"(7) Did the plaintiff *Wheeler* knowingly make false representations to the defendant *August Becker* as to the condition of the machinery in said creamery? *A.* No.

"(8) If you answer question 7 'Yes,' then did the defendant *Becker* rely upon said representations in making the purchase of said stock? *A.* ——.

"(9) If you answer question 8 'Yes,' then did the defendant *Becker* have a right to rely upon such representations? *A.* ——.

"(10) Did the plaintiff *Wheeler* knowingly make false representations to the defendant *Becker* as to the sum the Royalton Creamery Association was receiving per pound for making butter? *A.* Yes.

"(11) If you answer question 10 'Yes,' then did the defendant *Becker* rely upon said representations in making the purchase of said stock? *A.* Yes.

"(12) If you answer question 11 'Yes,' then did the defendant *Becker* have a right to rely upon such representations? *A.* No."

Both parties moved for judgment on the verdict. The defendants moved that the answers to the third, sixth, and twelfth questions be changed from "No" to "Yes," or that said answers to questions number 3, 6, and 12 be stricken out. The court treated the verdict as advisory and made the following findings:

That the plaintiffs, *George A. Baker* and *H. A. Wheeler,* were on the 6th day of December, 1910, and for some time prior thereto had been, the owners and holders of sixty-three shares out of a total of sixty-nine shares of stock of the Royalton Creamery Association, a domestic corporation located

at Royalton, Waupaca county, Wisconsin, and the par value of said stock was $50 per share, and the business that of manufacturing and selling butter and butter products; that the plaintiffs by reason of their ownership of said shares had a controlling interest in said creamery, and the plaintiff *H. A. Wheeler* on the 6th day of December, 1910, and since the 1st day of February, 1909, was the butter-maker at said creamery and had supervision and control of the manufacture and sale of butter at said creamery, had charge of the books and accounts thereof, and was secretary and treasurer of said association.

That shortly prior to the 8th day of November, 1910, the plaintiffs, *George A. Baker* and *H. A. Wheeler,* corresponded with the defendant *August E. Becker* for the purpose of negotiating a sale of said sixty-three shares of stock, and on said date said defendant *August E. Becker,* at the request of plaintiffs, went to Royalton for the purpose of entering into negotiations for the purchase of said creamery by purchasing said stock, and on December 6, 1910, plaintiffs sold and transferred to *August E. Becker* said sixty-three shares of stock for $3,000, the defendant *August E. Becker* thereupon paying plaintiffs $50 in cash and giving his promissory note for the sum of $450 dated December 6, 1910, due December 20, 1910; note for $500 dated December 6, 1910, due April 1, 1911, which note was also signed by defendant *John Becker;* note for $500 dated December 6, 1910, due December 1, 1912; note for $500 dated December 6, 1910, due December 1, 1913,— all of which notes were payable at the First National Bank of New London, Wisconsin, to the order of *George A. Baker* and *H. A. Wheeler,* bearing interest at the rate of six per cent. per annum.

That at the time of the sale of said stock one C. J. Jensen, of Royalton, Wisconsin, held fifty shares of said stock as collateral security for a loan of $1,000 made by him to plaintiffs, which debt was evidenced by notes, and as part of the

purchase price paid by said *August E. Becker,* and for the remaining $1,000 thereof said *August E. Becker* gave to said C. J. Jensen, at the request of plaintiffs, ten promissory notes dated December 6, 1910, each in the sum of $100, with interest at six per cent., the first note being due two months after date and one of said notes being due at the end of each interval of two months thereafter, and to secure said notes gave said C. J. Jensen a chattel mortgage on sixty-three shares of stock of the Royalton Creamery Association; that in consideration of the giving of said notes and chattel mortgage to said Jensen said Jensen canceled and surrendered to plaintiffs their note of $1,000 which he held, and delivered to plaintiffs the fifty shares of stock held by him as collateral security for said loan, which shares were transferred by plaintiffs to defendant *August E. Becker* as part of the purchase of said stock.

That said defendant *August E. Becker* paid said plaintiffs December 6, 1910, on the purchase price of said creamery $50, and between the 6th and 21st of December, 1910, paid plaintiffs $200, making a total payment in cash of $250, which was applied on the note for $450; that in January, 1911, by an agreement between plaintiffs and defendant *August E. Becker,* said note for $450, on which $250 remained unpaid, was surrendered up and transferred to said *Becker* in consideration of $250 to be paid, but which payment was never made, for the recovery of which, together with other items, plaintiffs have brought a separate action which is now pending; that there remain unpaid and outstanding obligations in favor of plaintiffs and against defendant *August E. Becker* $250, balance due on said $450 note; said note of $500 dated December 6, 1910, due April 1, 1911; note of $500 dated December 6, 1910, due December 1, 1912; note of $500 dated December 6, 1910, due December 1, 1913, all of which notes are payable to the order of *George A. Baker* and *H. A. Wheeler,* and are negotiable notes

bearing interest at the rate of six per cent. per annum; and the further sum of $1,000 in the form of ten notes of $100 each, dated December 6, 1910, payable to C. J. Jensen, the first two months after date, and one each of said other notes at a period of two months thereafter, all notes being negotiable and bearing interest at six per cent. per annum; that the obligations outstanding and unpaid of the defendant *John Becker* consist only of the note for $500 dated December 6, 1910, due April 1, 1911, payable to *George A. Baker* and *H. A. Wheeler,* being the note upon which plaintiffs have brought this action; that the defendant *John Becker* is the father of defendant *August E. Becker* and signed the note for the accommodation of *August E. Becker,* and said *John Becker* received no consideration for said signature.

That the following statements and fraudulent representations were made by the plaintiff *H. A. Wheeler* to the defendant *August E. Becker* as set forth in defendants' answer and counterclaim, to wit: (a) That the said creamery was doing a flourishing and profitable business and making 180,000 pounds of butter a year. (b) That said creamery had 128 satisfied patrons. (c) That there was no competition in the dairy business except from one creamery located at Weyauwega, Wisconsin. (d) That there was only one creamery in that locality, and that was located at Weyauwega, a distance of seven miles from Royalton creamery. (e) That the plaintiff *Wheeler* was receiving three cents per pound from the patrons of the creamery for making the butter at said creamery. (f) That the boiler in said creamery was five years old and in good condition and the separator was three years old and in good condition.

That said statements were made by the plaintiff *H. A. Wheeler* to the defendant *Becker* on the 8th day of November, 1910, at which time said *Becker* visited Royalton for the purpose of negotiating for the purchase of said creamery, and on December 6, 1910, defendant completed the purchase of

said stock; that the plaintiff *George A. Baker* aided and assisted plaintiff *H. A. Wheeler* in making said sale, and said *Baker* received and partook of the benefits acquired by said plaintiffs, by reason of said sale; that all of said representations were false and were made by the plaintiff *Wheeler* for the purpose of inducing the defendant *August E. Becker* to purchase the stock of said creamery association, and that the defendant *August E. Becker* believed said representations and statements and relied thereon in the purchase of said stock; that all of said representations and statements were of material facts; that the defendant *August E. Becker* had a right to rely upon all of said statements and representations except that statement in regard to the condition of the boiler and separator, and as to such representations the defendant *August E. Becker* had no right to rely thereon; that the facts and circumstances in regard to the representations and statements regarding the number of patrons and the state of competition, besides being false and untrue on November 8, 1910, were materially changed for the worse by December 6, 1910, said patronage materially less and said competition much greater December 6th than on November 8th, which decrease of patronage and increase of competition was brought about by conditions existing November 8th, known to plaintiffs and not known to defendants, and was largely, if not wholly, due to the Manawa condensing plant, which began operations about November 1st; and that said fact and the falsity of said statements were well known to the plaintiffs December 6th; that the defendant *August E. Becker* did not on December 6th know of any change in conditions and had no knowledge of facts to put him on inquiry as to any changed conditions, and relied and had a right to rely upon the information given by plaintiff *Wheeler* November 8th, all of which was well known to plaintiffs, but notwithstanding this they sold and transferred said shares of stock to said defendant without informing or making known to him the

change in condition of said business since said false representations were first made.

That said defendants after the purchase of said stock arranged with the plaintiff *Wheeler* to continue the running of said creamery until defendant *August E. Becker* could take actual charge thereof, and that defendant *August E. Becker* took actual charge December 20, 1910; that a meeting of the stockholders of said company was not held until January 12, 1911, and in the meantime plaintiff *Wheeler* refused and neglected until January 6, 1911, to deliver over or give said defendant *August E. Becker* the books of said creamery association or the books used in running the creamery; that in the latter part of December, 1910, and again about January 20, 1911, defendant *August E. Becker* demanded a rescission of this contract, agreeing to and tendering to said plaintiffs the consideration which he received in such contract and demanding the return of the notes and money paid by him to said plaintiffs, but that said plaintiffs utterly failed and refused so to do; that the plaintiffs are now the owners and holders of said promissory notes hereinbefore described, and the said C. J. Jensen the owner and holder of said ten promissory notes hereinbefore described.

That the defendant *August E. Becker* paid said plaintiffs on said notes $250 as follows: $50 December 6, 1910, $100 December 20, 1910, and $100 on or about December 16, 1910; that the defendant *August E. Becker* had incurred expense and suffered loss by reason of the purchase of said creamery under said false and fraudulent representations in the sum of $60 by reason of the expense of removal from his home in Denmark, Wisconsin, to Royalton, Wisconsin, and the further sum of $450 by reason of loss of time and wages, and the further sum of $50 by reason of incidental expenses incurred by him by reason of said fraudulent representations, amounting to $560, which said claims against the plaintiffs are stipulated to be correct and to be the amount recovered by said defendant, if he recovers in this action.

The court concluded that the facts alleged in the answer and counterclaim of the defendants and as proven on the trial invoke the relief of equity.

That the defendant *John Becker* was an accommodation maker of said note of $500 dated December 6, 1910, due April 1, 1911.

That the sale of sixty-three shares of stock by plaintiff to defendant *August E. Becker* was fraudulent.

That the defendants are entitled to a return and cancellation of said note of $500 dated December 6, 1910, due April 1, 1911, payable to *George A. Baker* and *H. A. Wheeler,* interest at six per cent.

That the defendant *August E. Becker* is entitled to a return and cancellation of the note for $500 dated December 6, 1910, due December 1, 1912, and the note for $500 dated December 6, 1910, due December 1, 1913, both of which were payable to plaintiffs.

That the plaintiffs are not entitled to recover from the defendant *August E. Becker* any part or portion of the sum of $250 which they credited said defendant on his note for $450 dated December 6, 1910, payable to plaintiffs December 20, 1910, and the defendants are entitled to a permanent injunction against plaintiffs restraining and forbidding them from negotiating or transferring said notes hereinbefore mentioned or any of them.

That the defendant *August E. Becker* is entitled to be protected and indemnified by the plaintiffs against any loss or damage by reason of said ten notes of $100 each, dated December 6, 1910, payable one at the end of two months and one each at the expiration of each two months thereafter, and is further entitled to have a lien upon said sixty-three shares of stock of the Royalton Creamery Association which were transferred to him by said plaintiffs, and to hold the same as security therefor until his said ten notes to said O. J. Jensen are canceled and returned to him.

That the defendant *August E. Becker* is entitled to recover

from said plaintiffs on his first counterclaim the sum of $250, with interest at six per cent. thereon from the 20th day of December, 1910, and on his second counterclaim the sum of $560, and is entitled to have a lien upon said sixty-three shares of stock and to hold the same as security for the payment of said sum of $250 with interest and said sum of $560.

That upon the return of said notes hereinbefore described said plaintiffs are entitled to a return and transfer by said defendant *August E. Becker* to said plaintiffs of said sixty-three shares of stock in the Royalton Creamery Association, subject, however, to a lien in favor of said *August E. Becker* and against said plaintiffs, to protect the said *August E. Becker* from loss or damage by reason of said ten notes of $100 each given to said C. J. Jensen, and subject further to the lien of said *August E. Becker* on said shares as security for the payment of the sums adjudged to said *August E. Becker* by reason of his first and second counterclaims, and that said *Becker* may retain said certificates of stock until said liens are satisfied.

That as to the defendants the plaintiffs take nothing on their complaint, and that the defendants are entitled to their costs and disbursements in this action.

Judgment was entered accordingly, from which the plaintiffs appealed.

For the appellants there was a brief by *Giles H. Putnam* and *Llewellyn Cole,* and oral argument by *Mr. Putnam.*

For the respondents there was a brief by *E. L. & E. E. Browne* and *Lloyd D. Smith,* and oral argument by *Mr. Smith.*

KERWIN, J.     The facts in the case fully appear in the statement of case hereinbefore set out.

The court below as well as the jury found that the alleged representations were made and in the main relied upon by defendant, were false, and damaged the defendant.     These

findings are well supported by the evidence notwithstanding they are vigorously assailed by counsel for appellants. True, the court disregarded the findings of the jury to the effect that the defendant did not have a right to rely upon the representations. In this regard the court was right. Upon the other findings and the evidence it was established as matter of law that the defendant did have a right to rely upon the representations, and therefore the court was justified in changing the answers to these questions or disregarding them.

Counsel for appellants, however, appear to rely with confidence upon the proposition that the defendant ought not to have been misled by the representations; that the representations were not such as a reasonably prudent man should have relied upon, the means of knowledge being equally open to both parties. We cannot agree with counsel in this contention. The material representations were not open and obvious, but on the contrary were such as might reasonably have been relied upon, as appears from the undisputed facts. True, if the representations were open and obvious and such as the defendant could have seen if he opened his eyes and looked, it is doubtless true that he could not claim that he had been deceived. But such is not the case before us. The falsity of the most material representations could have been discovered only by considerable time and research.

Appellants under this head rely upon *Prince v. Overholser,* 75 Wis. 646, 44 N. W. 775; *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *Schauer v. Bodenheimer,* 150 Wis. 550, 137 N. W. 785; *Jacobsen v. Whitely,* 138 Wis. 434, 120 N. W. 285; *Northern S. Co. v. Wangard,* 117 Wis. 624, 94 N. W. 785; *Kaiser v. Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Barndt v. Frederick,* 78 Wis. 1, 47 N. W. 6; *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863. An examination of these cases will show that they are distinguishable from the instant

case.   Reference to a few of them will illustrate their character.

In *Warner v. Benjamin, supra,* the representation was merely matter of opinion, not a representation of an existing fact or past event.   In *Farr v. Peterson, supra,* the general rule was laid down to the effect that where means of knowledge are at hand and equally available to both parties and the subject matter of the purchase equally open to their inspection, if the purchaser does not avail himself of those means and opportunities he will not be heard to say, in impeachment of the contract of sale, that he was drawn into it by the vendor's misrepresentations.   In *Bostwick v. Mut. L. Ins. Co., supra,* plaintiff agreed for a policy of insurance and received a different one, and upon receipt of the policy put it in a drawer without examination, although a casual glance at it and an accompanying letter would have disclosed that it was not the policy he expected.   Several months afterwards, on discovery of the fact, plaintiff for the first time objected.   Held, that the fraud, if any, was waived and the policy accepted.

*Bowe v. Gage, supra,* holds that it was not error to refuse to submit a question to the jury inquiring whether the misrepresentations were sufficient to influence the conduct of a person of ordinary intelligence; that there is no such issue in an action for deceit; that the sole question is whether the misrepresentations in fact deceived the party involved and materially affected his conduct.

*Jacobsen v. Whitely, supra,* holds that an action for deceit cannot be maintained by one who acted blindly upon statements whose falsity he knew or by the exercise of ordinary observation would have known.

The instant case is ruled by *Miner v. Medbury,* 6 Wis. 295; *Krause v. Busacker,* 105 Wis. 350, 81 N. W. 406; *Lee v. Burnham,* 82 Wis. 209, 52 N. W. 255; *Cotzhausen v. Simon,* 47 Wis. 103, 1 N. W. 473; *Davis v. Nuzum,* 72 Wis.

439, 40 N. W. 497; *Woteshek v. Neuman,* 151 Wis. 365, 138 N. W. 1000; *Brown v. Ocean A. & G. Corp., ante,* p. 196, 139 N. W. 1112; *Beetle v. Anderson,* 98 Wis. 5, 73 N. W. 560; and other cases in this court.

Appellants concede that a defrauded purchaser has two remedies: one to rescind, tender back all he has received, and recover what he has paid so that the parties would stand *in statu quo;* and also has the right to affirm the contract and recover damages for the fraud. It is claimed, however, by appellants that the defendant was not in position to rescind, because he had not tendered back all he had received, and the point is made that the money received from the sale of the milk rigs and milk cans, aggregating $135, had not been returned. The creamery having been destroyed by fire January 13, 1911, the defendant regarded it good business policy to sell the articles and hold the money in the treasury of the company, and also it is claimed that because of a fire which destroyed the creamery the defendant was not in position to place the plaintiffs *in statu quo,* hence could not rescind. In this connection it is also insisted that by delay, acquiescence, and waiver the defendant lost his right to rescind, if he ever had any, and that moreover the defendant had an adequate remedy at law, hence equity will not interpose. We think the equitable counterclaim states a good cause of action in equity. Moreover, no objection was taken to it by way of demurrer or answer on that ground, but the plaintiffs replied to the merits and the issues raised by the counterclaim and reply thereto were tried out upon the merits. That the equitable counterclaim must be sustained on the facts here is supported by the decisions of this court. *Miller v. Drane,* 100 Wis. 1, 75 N. W. 413; *Gullickson v. Madsen,* 87 Wis. 19, 57 N. W. 965; *Hall v. Bank,* 143 Wis. 303, 127 N. W. 969; *Hall v. Bell,* 143 Wis. 296, 127 N. W. 967; *Resch v. Senn,* 31 Wis. 138; *Scott v. Menasha,* 84 Wis. 73, 54 N. W. 263; *Hoff v. Olson,* 101 Wis. 118, 76 N. W. 1121; *Mahn v. Chicago & M.*

*E. R. Co.* 140 Wis. 8, 121 N. W. 645; *Pierstoff v. Jorges,* 86 Wis. 128, 56 N. W. 735; *Bigelow v. Washburn,* 98 Wis. 553, 74 N. W. 362. The defendant offered to do equity in the counterclaim for rescission. The court found upon sufficient evidence that in the latter part of December, 1910, and again January 20, 1911, the defendant demanded rescission. The $135 received for wagons and milk cans is held by the treasurer of the creamery company. The delay in demanding rescission and taking steps to enforce it is, we think, sufficiently explained in the evidence, and no extended discussion of the evidence on the point is necessary. Appellants specially rely upon payment of $250 by defendant to plaintiffs in January, 1911, as ratification of sale and waiver of right to rescind. But it appears that defendant did not have full information respecting the falsity of the representations at that time; besides, the conditions under which this payment was made did not amount to a payment such as would constitute ratification or waiver. The destruction of the factory by fire cannot be attributed to the defendant. Moreover, the money paid on adjustment of the loss represents the factory and is held by the clerk of the court pending the litigation, and is $1,908.95, while the evidence is that the factory at the time of sale was not worth more than $1,500. So the $135 received for property sold, and the insurance money, $1,908.95, being held for plaintiffs, the defendant offers to do equity in that regard, and it cannot be said that plaintiffs have been prejudiced by such changed conditions. We are not able to say that justice has not been done by the court below in the adjustment of the rights and equities between the parties, nor that the findings are not supported by the evidence.

It is further complained by counsel for appellants that a certain action which was pending at the time this action was commenced in which *George A. Baker* and *H. A. Wheeler* were plaintiffs and *August E. Becker* was defendant in some

manner has become wiped out by the instant action. True, the record in the other action was by stipulation of parties in this action put in evidence and made a part of the record in this action "for the sole purpose of placing such record before the court so that it can be informed of the nature of the action and the issues involved, and not for the purpose of being considered as evidence either for or against the plaintiffs or defendant in this action." Just what the purpose of putting the record in under such a stipulation was, is not very apparent. It is probable, however, that it was not the intention to consolidate the actions, or to adjudicate the issues involved in such other action in this, but to allow the other action to stand upon its own merits. However, the proper time to determine whether the issues involved in this action are *res adjudicata* in another is when such other is under consideration by the court, and since it may be, as appears from the stipulation and the whole record, that it was not the intention of the parties to litigate the issues in the other action in this, we should not attempt to consider them here. Of course if the issues involved in this action, or any of them, between the same parties, are the same as those involved in the other action, then the determination of such issues here is *res adjudicata* there. *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1; *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589; *Hart v. Moulton,* 104 Wis. 349, 80 N. W. 599.

The court below confirmed the taxation of costs by the clerk as in an equity action. This is also relied upon as error by counsel for appellants. The appellants insist that the character of the action as to being legal or equitable as regards costs must be determined from the complaint, while the respondent insists that the whole litigation grew out of the defendant's counterclaims, the principal one being equitable, therefore the defendant was entitled to full costs as in equitable actions. The question seems to have been settled

by this court in *Ward v. American H. F. Co.* 119 Wis. 12, 96 N. W. 388, against the contention of respondent, to the effect that where the action is at law upon contract the fact that an equitable counterclaim is set up and litigated does not change the character of the action as to costs.    Counsel for respondent insists that *Ward v. American H. F. Co., supra,* is not in point because in that case judgment went for plaintiff, while on the equitable counterclaim in the present action the judgment was for defendant.    But we think it clear that under the statute relating to costs the character of the action, whether one at law upon contract, or in equity, must be determined from the complaint.    Sec. 2921, Stats. Costs in the instant case other than disbursements were allowed at $98.24.    They should have been limited under the statute to $25 and disbursements.    Sec. 2921, Stats.    For this error the judgment must be modified.

*By the Court.*—The judgment of the court below is modified by reducing the item of $98.24, costs taxed exclusive of disbursements, to $25, and as so modified is affirmed.    The appellants are entitled to costs in this court.