WILTROUT, ET AL. v. SPRAGUE

(No. 1530; April 9, 1929; 276 Pac. 448)

216

For the defendant and appellant there was a brief by *Edwin L. Brown,* of Lusk.

For the plaintiffs and respondents, there was a brief by *Frank A. Barrett,* of Lusk, and oral argument by *Mr. Barrett.*

RINER, Justice.

The District Court of Niobrara County gave respondents, T. R. Wiltrout and Frank Wiltrout, who were plaintiffs below, judgment in a replevin action against the appellant, one of the original defendants therein, and we are asked by direct appeal to review the record. For convenience the parties will be referred to as plaintiffs and defendant, respectively.

The lawsuit was instituted by plaintiffs to recover possession of a Ford automobile and was at first brought against the defendant and her husband. Upon demurrer he was dismissed from the case. Plaintiffs' petition among other allegations, charged in substance that, they were the owners and entitled to the immediate possession of the car, which had a reasonable value of $400; that the defendants, on December 20, 1926, agreed to loan plaintiffs the sum of $39 and as security for this loan requested that plaintiffs give defendant Julia Sprague a bill of sale for the automobile aforesaid; that defendants also agreed that they would hold said instrument and return same upon the repayment within a reasonable time of the loan thus to be made; that it was further agreed, that defendants might

use the car until the loan was repaid as interest on the money loaned. This arrangement was carried out, it is then averred, and also that plaintiffs gave defendant a bill of sale, absolute in form. It is further alleged that on January 6, 1927, T. R. Wiltrout, one of the plaintiffs, tendered to defendants $39 in cash and demanded the return of the auto; that this tender has been repeated and still continues but defendants have failed and refused to return the car. Plaintiffs' pleading also contains allegations asserting that the bill of sale was fraudulently obtained from plaintiffs by defendants and that damages in a stated amount were claimed. The prayer was for the possession of the car or an alternate judgment for its value; that it be found that the bill of sale was given merely as security for the loan, and that plaintiffs be adjudged damages.

The answer of the defendants was substantially a general denial, admitting, however, the execution and delivery to defendant by plaintiffs of the bill of sale for the automobile.

The trial of the case was to the court without a jury, and upon its termination the judgment complained of was entered in favor of the plaintiffs. In this judgment it was found by the court that the bill of sale aforesaid was given by plaintiffs to defendant as security for the $39 loan, the amount of which had been tendered to defendant for repayment as claimed by the plaintiffs, and that the latter were entitled to the possession of the car on January 6, 1927, and also on March 9, following, the date of the commencement of the action. No fraud was found and nominal damages in the sum of $1 only were allowed. The judgment conformed to these findings.

The only question of consequence argued by appellant in connection with the errors assigned is, that plaintiffs, in a replevin action such as this could neither plead nor prove that the bill of sale to the automobile was in reality given as security for the loan made and was to be returned upon its repayment; that plaintiffs' remedy, if any, was a suit in equity to rescind the written contract of sale.

The object of an action of replevin is, of course, to determine the right of possession between the contending parties at the commencement of the suit, and any other question is relevant and material only as bearing upon that issue. Schlessinger v. Cook, 9 Wyo. 256, 62 Pac. 152.

Cobbey on Replevin (2nd Ed.), Sec. 977, speaking of the nature and scope of the evidence admissible in replevin actions, says that it

"depends wholly upon the nature and source of plaintiff's title or right of possession and the nature of the defense made. The investigation is not closely confined to the naked question of title or right of possession, as these, especially the latter, are frequently but conclusions drawn from other facts and circumstances which must be investigated and understood in order that a correct conclusion may be arrived at, and the evidence may be such as goes to establish or controvert these incidents, or circumstances. The pleadings, evidence and judgment in an action of replevin should be confined to the points and questions necessary to elucidate the right of the plaintiff to the immediate possession of the property in question at the commencement of the suit."

This author further remarks in Section 984:

"Any thing which properly belongs to or explains the transaction in question which would be admissible under the rules of evidence in any other form of action is admissible in replevin. If there is a difference, more latitude is allowed in a replevin action."

Wells on Replevin (2d Ed.), Sec. 318, a later work, unqualifiedly says that:

"The rule may be regarded as settled that where goods are obtained from the owner by fraudulent purchase, he can sustain replevin against the fraudulent purchaser so long as the goods are in his possession."

The first text writer from which we have quoted above had previously reached a conclusion similar to that of Mr.

Wells, Section 262 of his discussion of the subject reading in part:

"The rule of law is well settled that a sale and delivery of goods procured by fraud passes no title to the fraudulent vendee as between him and the vendor, and the latter may maintain replevin to recover the goods."

The adjudged cases cited by these authorities amply sustain their conclusion that replevin will lie to recover goods obtained by fraud.

In Roesler v. Shastri, 168 Wis. 153, 169 N. W. 282, an action of replevin to recover a bank draft claimed to have been obtained from the plaintiff through the fraudulent representations of the defendant, it was said:

"Claim is made that since, in delivering the draft to the defendant, plaintiff parted with the legal title thereto, he cannot maintain replevin to recover it. This court has several times negatived that claim, and held that replevin will lie to recover goods obtained by fraud. Singer v. Schilling, 74 Wis. 369, 43 N. W. 101; Lee v. Burnham, 82 Wis. 209, 52 N. W. 255; Mayhew v. Mather, 82 Wis. 355, 52 N. W. 436."

Another illustrative case on the point is Amer v. Hightower, 70 Cal. 440, 11 Pac. 697—likewise a case to recover the possession of certain personal property or its value in case delivery could not be had and damages for its detention. There, the plaintiff a witness in his own behalf, admitted on cross-examination that he had made a bill of sale of the property described in the complaint. The bill of sale being shown to him, he testified that "he signed it but it was gotten out of him by lying." The bill of sale, absolute in form, was then offered by the defendants and received in evidence. On redirect examination plaintiff was asked to state all the circumstances under which he gave the bill of sale. The defense objected to this question as incompetent under the pleadings; that "no fraud having been alleged in the complaint and this being an action at

law, the plaintiff was bound by the wording and language of the bill of sale and could not vary, alter or modify it by parol testimony.'' For the plaintiff, an offer of proof in detail was made, that the bill of sale was obtained from him through fraud, falsehood and deceit on the part of the defendants. The trial court sustained the objection and refused to allow any such testimony. A judgment upon an instructed verdict for the defendants followed. Before the appellate court it was claimed that the recital in the bill of sale that the plaintiff does ''hereby sell and deliver'' to the defendant the property in question, was ''conclusive upon him and not subject to be disputed except by a suit in equity to set aside the bill of sale.'' To this contention the reviewing court responded:

''In our opinion, the claim is not supported by reason or authority. The rule is well settled that, when a sale of personal property is procured by fraud, the ownership of the property is not changed unless the seller in some way afterwards ratified the sale.''

The court further said:

''The testimony offered and rejected was to the effect that the bill of sale and the possession of the property were obtained from the plaintiff by fraud and misrepresentations, and that as soon as he discovered the fraud he repudiated and rescinded the sale. This was competent testimony, and should have been received. The rule above stated has not been changed by the code. Fraud vitiates a sale now, as it did before the codes were passed, nor have the remedies been changed.'' The judgment was accordingly reversed.

Where a plaintiff is thus permitted in a replevin action to show that an instrument of transfer of personal property, valid and absolute on its face, is vitiated by fraud practiced upon him by the defendant, obviously he is proving that the instrument is other than what it purports to be, so far as its binding effect on him is concerned. He shows it to be a nullity because of deceitful conduct on the

part of the defendant in procuring it. The legal consequence of such proof goes directly to the real issue between the parties, i. e., the right of possession of the property involved. We fail to perceive why it should not also be permitted the plaintiff in replevin to establish that the bill of sale he gave the defendant was not altogether a nullity, but simply that it was not a complete statement of the real obligation of the parties, and that the entire and actual agreement between them was to the effect that while an instrument of transfer of the property was to be given defendant by plaintiffs, yet it was merely a security for a loan made at the time and was to be returned upon the repayment of the money being made. Logically there would seem to be very little difference in the two cases, although it would appear that the first goes a step farther than the latter.

Our attention has been called to the cases, Penton v. Hansen, 13 Okla. 450, 73 Pac. 843, and Meyer v. Bigham, 16 Ariz. 212, 141 Pac. 726, as in point. But we do not deem them applicable here. In the Penton case, there was a complete written contract between the parties, concededly binding, requiring the defendant, in consideration of one-half the increase, to take and care for certain animals during the period of three years. Before that time elapsed, the defendant wrongfully sold some of them. Plaintiff undertook to replevin those still remaining in defendant's possession. It was neither claimed nor proven, as in the case at bar, that the written contract did not show the whole agreement of the parties. Neither was there any fraud charged. It was held that the action of replevin could not be maintained. The rule that ''a vendor may replevin goods from a vendee, who by false and fraudulent representations has obtained the same'' was conceded, but it was said that this was not that kind of a case.

The Meyer case, an action by a vendor to replevin personal property to which he had given the defendant a bill of sale, was reversed because plaintiff was allowed to prove

mistake on his part and fraud or inequitable conduct on the part of the defendant. The Penton case is cited in the decision but no reference is made to the general rule allowing replevin by a vendor misled by defendant's fraudulent representations, as conceded in that decision. The case appears to have been disposed of mainly upon the ground that only the ordinary allegations in a replevin action were set out by plaintiff, and nothing regarding fraud was charged. Otherwise the case would seem to be in disregard of a well settled principle of the law. Under codes of procedure similar to that in use in our state, the rule as to pleading the claimed fraud in such a case would seem to be at variance with that announced in Meyer v. Bigham. See Bates New Pleading and Practice, p. 2585, and cases cited. See also Amer v. Hightower, supra. However, pleading the fraud does, we think, reasonably make for fairness and absence of surprise at the trial of the issues.

One of the ways in which a defendant may defeat an action of replevin is by showing that the property belongs to, and that the right of possession is in, a third party. A case invoking this principle and at the same time pertinent here, is that of Wills v. Barrister, 36 Vt. 220. The facts there disclosed were that plaintiff had bought a cow and for sometime thereafter the defendant, for whom plaintiff had for many years worked and near whom and in whose house he lived, furnished keep for her, charging plaintiff with the several items thereof. Plaintiff had the sole use and management of the cow. Subsequently plaintiff left the defendant's employ and moved out of his house. When he went for his cow, defendant declined to give her up, claiming to hold her for her keep. Plaintiff soon after replevined the animal. On the trial the defendant gave in evidence a writing on its face purporting to be an absolute bill of sale to the cow from the plaintiff to a third party, one Sprague, in consideration of $25 paid by the latter. The execution of this writing was conceded. Plaintiff

proved by his own and Sprague's testimony that he, Wills, had always had possession of the animal and that he had, by agreement, the right to redeem the cow by paying the $25, and "that the writing was intended only as security for the debt." This testimony was objected to by the defendant and admitted subject to the objection. Holding that it was quite proper to receive the evidence, the appellate court said:

"But it was further shown in the case that, though the contract in writing purported an absolute sale, still the transaction was in point of fact a conveyance by way of security for a debt, with an agreement of defeasance upon paying the specified amount of the indebtedness.

"This agreement of defeasance was verbal, but it is not claimed, as it indeed could not well be, that such a parol agreement of defeasance might not be shown, and be effectual to characterize and show the true intent and legal effect of the transfer.

"In this view, Sprague's title was that of mere mortgagee, and the possession could properly remain in the mortgagor, unless the mortgagee saw fit to take the possession, and thus convert the mortgage into an executed pledge."

In Francis, et al. v. Guaranty State Bank, 44 Okla. 446, 145 Pac. 324, the plaintiff in its petition in replevin alleged generally its ownership of certain horses. It was held in the opinion disposing of the case that the defendant need not set up in his answer that a bill of sale under which plaintiff claimed title was in fact, and was intended only as, a mortgage, in order to introduce evidence to that effect. Reversing the case on account of a ruling of the trial court sustaining objections to questions propounded to elicit such a state of facts, the following language was used:

"Among the errors assigned is that the court erred in sustaining objections to certain questions which sought to bring out the fact that plaintiff was not the absolute owner of the animals in controversy, as alleged in both its original

and amended petition, and by which it was sought to prove that the bill of sale given by H. B. Cox, acting through his wife, to the defendant in error was intended only as a mortgage, and that the legal title to the horses was either in H. B. Cox or his wife, to whom it appears Cox had subsequently transferred them. If the instrument was so intended, and if there was an agreement between either Cox, or his wife acting in his behalf, and the Guaranty State Bank that the latter was to hold the property until a time agreed upon, when Cox should pay such indebtedness as he may have been owing the bank, then it is obvious that plaintiff was not the absolute owner of the property. The allegation of ownership had been, as we have seen, put in issue by defendants' general denial. Where the plaintiff in a replevin action claims title in himself, he must prove title against the world, as on such an issue a general denial puts in issue the right on which plaintiff bases his writ. * * * Where the property belongs to, and the right to possession is in a third party, the plaintiff cannot recover, and if the property has been taken from the defendant there must be judgment for its return. Anything going to show that the plaintiff in replevin has no right to the possession when suit was commenced is a complete bar to the action. Under our code, the gist of the action of replevin is the wrongful detention by the defendant as against the plaintiff, and under a general denial the defendant may prove anything that will tend to show that he does not wrongfully detain the property as against the plaintiff.''

To the same effect, on similar facts, is Kerron v. North Pacific etc. Co., 1 Wash 241, 24 Pac. 445.

Thus we have instances in the reports where both plaintiff and defendant have been allowed to introduce evidence such as is complained of in the case at bar. In the Oklahoma and Washington decisions, it was held that the defendants should have been permitted to make proof covering the point, although they had not specifically pleaded the facts upon which they relied. In the matter now before us, as already indicated, the plaintiffs have pleaded the facts of the transaction quite fully, as they claimed them to exist, and there is no good reason that we can see why

they should not have the benefit of their proof in support of them. By their evidence on the point, they were only laying before the court "the true intent and legal effect of the transfer." As already intimated, they were not required to go so far in invoking equitable principles as would have been necessary had they succeeded in proving fraud, as charged.

The finding of the trial court that the bill of sale was a mere security for the loan of $39, was rendered upon conflicting evidence, and such conclusion under familiar principles of appellate procedure should not be disturbed. Possibly it may not be out of the way to remark that if, upon this record, we were trying the matter anew, our conclusion would be the same as was reached by the learned judge in the District Court.

Finding no error in the case, the judgment is accordingly affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.